EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Frente Unido Pro Defensa del Valle de Lajas, etc. Recurrentes v. Secretario de Justicia, etc. Recurridos | Certiorari 2000 TSPR 76 |
|---|---|

Número del Caso: CC-1999-0084

Fecha: 25/05/2000

Tribunal de Circuito de Apelaciones: Circuito Regional IV

Juez Ponente: Hon. Angel F. Rossy García

Abogados de la Parte Recurrente:

Lcda. Elbia I. Vázquez Dávila
Lcdo. Angel L. Morales Rodríguez
Lcdo. Ismael Pagán Morales

Abogado de Altavista, S.E.:

Lcdo. Salvador Rivas Dominici

Abogados del Municipio de Lajas:

Lcdo. Nasser Taha Montalvo

Abogado del Departamento de Justicia:

Lcda. Rosa Corrada

Materia: Acción Civil

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Frente Unido Pro Defensa del
Valle de Lajas, et al.

    Demandantes-Recurrentes


        v.                          CC-1999-84      Certiorari

Secretario de Justicia;
Altavista, S.E. Representada
por su Presidente Carlos
Meléndez, et al.

    Demandados-Recurridos

Opinión del Tribunal emitida por el Juez Asociado señor Negrón García

San Juan, Puerto Rico, a 25 de mayo de 2000

I

En mayo de 1994, Altavista S.E. solicitó a la Junta de Planificación Variación o Dispensa para desarrollar una urbanización de cerca de 424 residencias denominada Brisas de Lajas. Dicho proyecto se construiría en la Finca Núm. 484, predio de 50.49 cuerdas ubicado en el Km. 3.5 de la Carr. Estatal 116 del Bo. Sabana Yeguas, Lajas, **dentro del área denominada Distrito de Regadío del Valle de Lajas.**

Esta propiedad perteneció a la Corporación de Renovación Urbana y Vivienda (CRUV) desde diciembre de 1979, cuando la adquirió por compra a la West

Land Development, Inc., con la finalidad de dedicarla a vivienda pública. No obstante, dicho objetivo no se materializó, por lo que, al dejar de existir la C.R.U.V. -Ley Núm. 55 de 9 de agosto de 1991-, pasó a formar parte de los activos de su Oficina de Liquidación de Cuentas. El 19 de septiembre de 1994, esta Oficina concedió una opción de compra a Altavista S.E. para el desarrollo de un proyecto de vivienda, calificado como de interés social. El Director de la Oficina de Liquidación dio su endoso para una consulta de ubicación, a los fines que Altavista iniciara los trámites ante la Junta de Planificación.

Altavista acompañó a su Solicitud de Variación o Dispensa, una "Memoria Descriptiva" informando que: proponía desarrollar una primera etapa de 264 unidades de vivienda en solares de 300 metros cuadrados y una segunda etapa de 150 viviendas adicionales; los terrenos no estaban zonificados y proponía un uso correspondiente a un Distrito Residencia R-3; el proyecto no tendría impacto ambiental significativo, ni crearía impacto en la infraestructura existente, y se desarrollaría al amparo del Nuevo Programa de Viviendas a bajo costo, por lo que catalogó como de interés social.

Acogida por la Junta de Planificación la solicitud de variación como una consulta de ubicación,[1] y con el

[1] Toda vez que el proyecto ubicaba en un área no zonificada, la Junta de Planificación determinó que el mismo debía ser tramitado mediante una consulta de ubicación. Resolución 8 de septiembre de 1994.

propósito de dar cumplimiento a la Ley sobre Política Pública Ambiental —Núm. 9 de 18 de junio de 1970—, ésta suspendió todo los trámites para recibir el insumo de las agencias concernidas, así como del Municipio de Lajas.

Luego de recibir los comentarios de las agencias consultadas, la Sra. Astrid López de Victoria —funcionaria de Planificación responsable de la preparación de las declaraciones de impacto ambiental—, los refirió a la Junta de Calidad Ambiental. No obstante, Planificación no incluyó una comunicación de la Autoridad de Energía Eléctrica en la que la agencia retiraba temporeramente su endoso, hasta tanto se aumentara la capacidad de la subestación que sirve el área de Lajas. **Tampoco informó de las observaciones y recomendaciones sometidas por el Dpto. de Agricultura, que objetaba la aprobación de la consulta porque el proyecto afectaba grandemente el desarrollo agrícola del área.**[2] En su carta, López de Victoria, concluyó que con sujeción al cumplimiento de ciertas condiciones, el proyecto no tendría impacto adverso significativo sobre los recursos de agua, aire y suelo, declaración de impacto ambiental negativa.

---

[2] Para la fecha en que la Junta de Planificación sometió los comentarios a la Junta de Calidad Ambiental, no se había recibido la posición del Instituto de Cultura Puertorriqueña, Programa de Arqueología, el cual había notificado a Planificación que la información provista sobre ubicación y características del proyecto eran insuficientes para determinar si el desarrollo podría impactar recursos culturales. **Requirió que previo a cualquier movimiento de tierras se sometiera cierta información adicional.**

Solicitó a la Junta de Calidad Ambiental que sometiera sus comentarios.

Con este trasfondo la Junta de Calidad Ambiental dictaminó que la Junta de Planificación había cumplido con la fase de evaluar el posible impacto ambiental de la acción propuesta, conforme el Art. 4(c) de la Ley Política Pública Ambiental.

Así las cosas, la Junta de Planificación emitió una segunda extensión a la Consulta, la cual aprobó el 8 de septiembre de 1994. Altavista prosiguió con los trámites ante A.R.P.E. y una vez obtuvo el permiso de urbanización, comenzó la remoción de terreno.

A la luz de estos antecedentes, una vez los vecinos del área y miembros del Frente Unido Pro Defensa del Valle de Lajas se percataron del inicio de las labores de remoción de terreno y advinieron en conocimiento de la existencia del permiso de ubicación, instaron una acción de mandamus, interdicto y sentencia declaratoria al amparo del Art. 20 de la Ley Política Pública Ambiental.

Fundamentaron su acción en el alegado incumplimiento por parte la de las Juntas de Planificación y Calidad Ambiental de sus obligaciones de realizar un análisis del impacto ambiental de la acción propuesta mediante una Evaluación Ambiental (EA) o una Declaración de Impacto Ambiental (DIA). Respecto a la desarrolladora Altavista, alegaron que sometió información tergiversada y errónea a la Planificación, fraccionó el proyecto para que aparentara

ser de menor tamaño y había comenzado la remoción de terrenos sin tener los permisos arqueológicos necesarios.

El Tribunal de Instancia, Sala Superior de Mayagüez (Hon. Vera Vera), tras la celebración de la correspondiente vista, emitió sentencia dejando sin efecto el permiso de ubicación de la Junta de Planificación, y toda actuación de A.R.P.E. Ordenó la Junta preparar y someter a la Junta de Calidad Ambiental una Declaración de Impacto Ambiental y, por último, emitió interdicto permanente contra Altavista para que se abstuviese de efectuar cualquier acción a la luz de los permisos dejados sin efecto. Concluyó dicho Tribunal que la Junta de Planificación, "tomó una decisión apresurada, desinformada por sus propios actos, sin adecuada evaluación y ponderación de las políticas públicas sobre manejo de suelos, en menosprecio de la autoridad del Departamento de Agricultura sobre los terrenos del Distrito de Riego, sin preocuparse por recibir los comentarios del Instituto de Cultura sobre los recursos arqueológicos del área, sin la celebración de vistas públicas y sin las notificaciones adecuadas a los interesados. Tal actuación constituye incumplimiento de los deberes ministeriales que le impone la Ley 9, y además, impidió que la Junta de Calidad Ambiental estuviera en posición de evaluar con criterio informado la actuación que se proponía realizar la Junta de Planificación."

Inconforme, Altavista apeló al Tribunal de Circuito de Apelaciones (Hons. Rossy García, Martínez Torres y

Rodríguez García). Oportunamente, dicho foro dictó sentencia. Resolvió que la Declaración de Impacto Ambiental Negativa sometida por la Junta de Planificación, era adecuada y suficiente, por lo que incidió Instancia al sustituir el criterio de la Junta. Expuso su criterio de que la ausencia de endoso del Instituto de Cultura no tenía el efecto de anular los permisos impugnados ni que la existencia de yacimientos arqueológicos, per se, impedía el desarrollo del proyecto Brisas de Lajas. Así, modificó el dictamen de instancia y suspendió la eficacia de los permisos y consultas aprobados por la Junta de Planificación y A.R.P.E. autorizando el proyecto, hasta tanto se cumpliera con los requerimientos y la recomendación del Instituto de Cultura. Por tal razón dejó en vigor el interdicto permanente que paralizó las obras, en particular la remoción de los terrenos.

A solicitud del Frente Unido Pro Defensa del Valle de Lajas, revisamos.[3]

---

[3] Discute los siguientes señalamientos:

"ERROR NÚMERO 1. Erró el Honorable Tribunal Apelativo al restarle validez e importancia y descartar todas las determinaciones de hechos señaladas por el Tribunal de Instancia y que sirvieron de base para sostener que bajo la Ley de Política Pública Ambiental (Ley. No.9, 18 de junio de 1970) en adelante Ley 9, la Junta [de] Planificación venía obligada a preparar una Declaración de Impacto Ambiental antes de aprobar el permiso sobre consulta de ubicación.

ERROR NÚMERO 2. Erró el Honorable Tribunal Apelativo al sostener que el Tribunal de Instancia sustituyó su criterio por aquel de la agencia (Junta de Planificación) cuando del récord surge que la Junta de Planificación se desvió del trámite

II

La aprobación de la Ley Núm. 277 de 20 de agosto de 1999, hace innecesario evaluar los errores planteados por el Frente Unido Pro Defensa del Valle de Lajas. **Veamos**.

"A medida que transcurren los años, el aumento en la población y la demanda por áreas para desarrollo urbano obligan a las agencias reguladoras a trabajar en mayor coordinación para garantizar que las tierras con potencial agrícola sean preservadas para dichos fines exclusivamente. Es de conocimiento que el Valle de Lajas, por su topografía llana y de fácil manejo constituye un gran atractivo para desarrollos residenciales, comerciales, industriales, turísticos y recreativos. Sin embargo, una planificación adecuada de las actividades agrícolas en todo el Valle de Lajas y un eficiente mantenimiento y operación del sistema de riego puede convertir estos terrenos en el granero de Puerto Rico, ya que son ideales para las siembras de maíz, arroz, habichuelas y sorgo, entre otras cosechas.

La preservación de los terrenos del Valle de Lajas para el desarrollo agrícola requiere del establecimiento de una **política pública enérgica que contribuya al cumplimiento de estos propósitos, y conlleva el establecimiento de una zonificación especial y claramente definida.** También es necesario que se fomente el establecimiento de nuevas empresas agrícolas que contribuyan al desarrollo económico de la zona y por consiguiente, a la creación de empleos en este sector de la economía. **Con la zonificación agrícola de estos terrenos se evitará el desarrollo desarticulado de otras empresas o desarrollos no agrícolas y se garantizará la preservación de estos terrenos para generaciones futuras.**" Exposición de motivos, Ley Núm. 277 de 20 de agosto de 1999. Énfasis nuestro.

---

dispuesto por la Ley de Política Pública Ambiental y su Reglamento.

ERROR NÚMERO 3. Erró el Honorable Tribunal Apelativo al determinar que por ser un área no zonificada de acuerdo a los Mapas de Zonificación de Junta de Planificación, carece de valor el hecho irrefutable que dicho terreno esta comprendid[o] dentro de un área de manejo especial bajo el Distrito de Riego del Valle de Lajas."

Bajo la Ley Núm. 277 la Asamblea Legislativa reconoció expresamente la importancia agrícola de los terrenos que componen el Valle de Lajas. Con el fin de continuar el desarrollo de la agricultura en esa región **declaró el Valle de Lajas <u>reserva agrícola</u>**. Art. 1.

A esos efectos **se ordenó** a la Junta de Planificación, en coordinación con el Dpto. de Agricultura, adoptar una Resolución de Zonificación Especial que reserve y destine las fincas a la producción y desarrollo agrícola. Los siguientes terrenos deberán ser incorporados en dicha zonificación: los predios que actualmente tienen acceso a riego; aquellos que en el futuro puedan tenerlo y se identifiquen como de valor agrícola; y los que colinden con los identificados como de valor agrícola y sirvan de zonas de amortiguamiento.[4]

Por otro lado, la aprobación de consultas de ubicación y la otorgación de permisos de construcción o uso que estén en contravención con la declaración legislativa del Valle, como reserva agrícola, quedaron **vedados**. (Art. 3).

Por último, el Art. 6 establece una **cláusula transitoria** para el **cese** de toda actividad no agrícola, que en lo pertinente lee:

> "Cualquier actividad no agrícola existente ubicada en **terrenos de uso agrícola o que afecten adversamente la actividad agrícola dentro de la Reserva,** deberá cesar dentro de los dos (2) años de aprobada la Resolución de Zonificación Especial; **disponiéndose que toda <u>actividad no</u>**

---

[4] La Zonificación Especial deberá ser promulgada por la Junta de Planificación no más tarde de dos (2) años después de aprobada la ley.

**agrícola a la que cualquier agencia reguladora hubiese concedido permiso para su ubicación, construcción, uso o aprovechamiento y que no hubiese comenzado y completado la actividad para la cual recibiera tal aprobación, deberá cesar de inmediato y todo permiso otorgado será revocado, sujeto a justa compensación....**" Énfasis nuestro.

La finca en la que se propone el proyecto en controversia es parte del Distrito de Regadío del Valle de Lajas, iniciado como parte de las disposiciones de la Ley Núm. 23 del 27 de agosto de 1952, 22 L.P.R.A. sec. 341, et seq. Esta ley estableció el Sistema de Riego del Proyecto Suroeste de Puerto Rico, conocido como el Proyecto del Valle de Lajas. La ley ordenó que se preparara una lista de los terrenos seleccionados para formar parte permanente del Distrito de Regadío, la que contendría una descripción de cada predio o subdivisión de terrero incluido en el Distrito, el nombre del propietario, y haría preparar un mapa o mapas a escala mostrando cada uno de los predios. Dicha lista y los mapas se presentarían en la Oficina del Secretario de Hacienda "y desde esa fecha los terrenos incluidos en ellas constituirían legal y permanentemente el Distrito de Regadío". 22 L.P.R.A. sec. 368.

La Ley adscribió al Secretario de Agricultura la responsabilidad del desarrollo agrícola del Valle de Lajas y sus terrenos. Dispuso, además, que podría hacerse la exclusión de un predio de terreno del Distrito cuando "se determinase por el Secretario de Agricultura que han dejado de tener utilidad para fines agrícolas o por cualquier otra

razón en beneficio del mejor del Distrito de Regadío..." 22 L.P.R.A. sec. 368.

Según la prueba desfilada ante el Tribunal de Instancia, hoy el Distrito es de 20,249.90 cuerdas del total de cuerdas que comprende todo el Valle de Lajas, y de estas, el 61% están localizadas en el municipio de Lajas. El Sistema de Riego incluye el embalse del Río Loco en Yauco, que sirve de lago regulador; 21 millas del canal principal de riego; 43 millas de canales de riego laterales; y 300 compuertas para entregar las aguas de riego a las distintas fincas. El sistema de desagüe se compone de 64 millas de canales principales y secundarios, que proveen avenamiento a las fincas y recogen el exceso de las aguas de lluvia y las aguas sobrantes del riego para conducirlas al mar.

Uno de los predios incluido dentro del Distrito de Riego lo es la Finca 484, que tiene una toma de agua para riego con el número L8421. Era operada para siembra de caña de azúcar hasta 1987. La propiedad tiene acceso directo, en su punto de colindancia noroeste, con un lateral de riego –canal secundario hecho en cemento que lleva agua a los predios del riego y desde ahí se toma agua para el riego. Además, en toda su colindancia sur, está bordeada por canales de desagüe, construidos por el Sistema de Riego. Toda la colindancia este corre paralela a la Quebrada Mondongo, área convertida también en canal de desagüe.

Los terrenos cercanos a la Finca 484 están siendo usados intensivamente para propósitos agrícolas: siembra de pastos para pastoreo y heno; crianza de caballo de carrera y paso fino; siembra de pimientos, ajíes, etc. Hacia al oeste existen amplias fincas de caña de azúcar.

Bajo la Resolución de Zonificación Especial ordenada por la Asamblea Legislativa, la Finca 484 quedará reservada y destinada a la producción y desarrollo agrícola, pues es un predio que tiene actualmente acceso al riego.[5]

El inequívoco mandato Legislativo de la Ley Núm. 277 dispone del caso. Siguiendo la letra de su Art.6, toda actividad no agrícola, desarrollo residencial, Urb. Brisas de Lajas, a la que cualquier agencia reguladora (Junta de Planificación y A.R.P.E.) hubiese concedido permiso para su ubicación, construcción, uso o aprovechamiento que no hubiese comenzado y completado la actividad para la cual recibió tal aprobación[6] **debe cesar de inmediato y todo permiso otorgado se revoca, sujeto a justa compensación.**

---

[5] Art. 2: "La Junta de Planificación, en coordinación con el Departamento de Agricultura, deberá llevar a cabo todos los estudios necesarios de las fincas comprendidas dentro del denominado Valle de Lajas, para el ordenamiento de esos terrenos mediante promulgación y adopción de una Resolución de Zonificación Especial, a los fines de reservar y destinar las fincas del referido Valle a la producción y desarrollo agrícola. Para este propósito, podrá requerir a todo ente gubernamental o privado, apoyo pericial o de campo. **En la Zonificación Especial deben estar incluidas además de las tierras que actualmente tienen acceso a riego**, aquellas que en el futuro puedan tenerlo y se identifiquen como de valor agrícola. De igual forma, aquellas tierras que colinden con las identificadas como de valor agrícola y que sirvan de zonas de amortiguamiento deberán ser incorporadas en la Zonificación Especial."

[6] El proyecto fue paralizado por el Tribunal de Instancia el 28 de mayo de 1996, antes que se terminara la fase de remoción de terreno y relleno.

Se dictara la correspondiente sentencia.


ANTONIO S. NEGRÓN GARCÍA
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Frente Unido Pro Defensa del
Valle de Lajas, et al.

   Demandantes-Recurrentes


       v.                         CC-1999-84     Certiorari

Secretario de Justicia;
Altavista, S.E. Representada
por su Presidente Carlos
Meléndez, et al.

   Demandados-Recurridos


SENTENCIA


San Juan, Puerto Rico, a 25 de mayo de 2000


Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente, se dicta Sentencia confirmando la del Tribunal de Circuito de Apelaciones que mantuvo en vigor el interdicto permanente paralizando las obras del proyecto Brisas de Lajas, aclarando que en virtud de la Ley Núm. 277 de 20 de agosto de 1999, queda además revocado cualquier permiso otorgado por la Junta de Planificación y A.R.P.E. relativo a dicho proyecto.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. Los Jueces Asociados señores Fuster Berlingeri y Corrada del Río no intervinieron.


                            Isabel Llompart Zeno
                        Secretaria del Tribunal Supremo


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.