EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Junta de Planificación de Puerto Rico<br><br>Peticionaria<br><br>v.<br><br>Frente Unido Pro Defensa del Valle de Lajas, Asociación de Agricultores de P.R., Colegio de Agrónomos de P.R.<br><br>Recurridos | Certiorari<br><br>2005 TSPR 117<br><br>165 DPR \_\_\_\_ |

Número del Caso: CC-2004-946

Fecha: 26 de agosto de 2005

Tribunal de Circuito de Apelaciones:

      Región Judicial de Ponce

Juez Ponente:

      Hon. Rafael L. Martínez Torres

Abogada de la Parte Recurrida:

      Lcda. Elbia I. Vázquez Dávila

Abogado de la Parte Peticionaria:

      Lcdo. Luis Fco. Rodríguez Bonilla

Materia: Impugnación de Reglamentación y Mapas

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Junta de Planificación de Puerto Rico

   Peticionaria

     v.       CC-2004-946

Frente Unido Pro Defensa del Valle de Lajas, Asociación de Agricultores de P.R., Colegio de Agrónomos de P.R.

   Recurridos

Opinión del Tribunal emitida por el Juez Asociado señor Rivera Pérez.

San Juan, Puerto Rico, a 26 de agosto de 2005.

  Mediante el recurso ante nos, la Junta de Planificación de Puerto Rico solicita de esta Curia la revocación de una sentencia dictada por el Tribunal de Apelaciones el 25 de junio de 2004, según modificada por Resolución de 26 de agosto de 2004, en la que declaró inválida la aplicación del Reglamento de Zonificación Especial para las Reservas Agrícolas de Puerto Rico sobre la Reserva Agrícola del Valle de Lajas. Asimismo, la Junta de Planificación recurre de la Resolución del 1 de septiembre de 2004 emitida por ese Tribunal, mediante la cual se declaró no ha lugar a una

solicitud de reconsideración por falta de jurisdicción.

Examinado el recurso ante nos, concedimos a la parte aquí recurrida un término de veinte (20) días para mostrar causa por la cual no debíamos revocar al Tribunal de Apelaciones, por haber actuado sin jurisdicción. Habiendo comparecido ésta, estamos en posición de resolver los asuntos traídos ante nuestra consideración. Confirmamos al foro recurrido. Veamos.

I

La Junta de Planificación de Puerto Rico, en adelante la Junta, es una entidad creada por ley, cuyo objetivo principal es guiar el desarrollo integral y balanceado de Puerto Rico. La Asamblea Legislativa le confirió amplios poderes para clasificar y designar los terrenos en zonas y distritos, y así establecer las normas que guiarán su uso y desarrollo.[1] La Ley Orgánica de la Junta de Planificación, Ley Núm. 75, de 24 de junio de 1975, según enmendada,[2] en su artículo 16, le confirió a ésta la facultad para adoptar, entre otros, un reglamento de zonificación mediante el cual se guíe y controle el uso y desarrollo de los terrenos de las áreas urbanas y rurales de Puerto Rico.[3] Asimismo, la Junta, en virtud del artículo 11 de dicha ley, tiene la facultad de adoptar y aprobar los mapas

---

[1] Asoc. Res. Park Side, Inc. v. Junta de Planificación, 147 D.P.R. 277 (1998).

[2] 23 L.P.R.A. sec. 62 *et seq.*

[3] 23 L.P.R.A. sec. 62o.

de zonificación, las enmiendas a éstos y los reglamentos que le autorice promulgar cualquier otra ley con un fin especial.[4]

La Asamblea Legislativa, en reconocimiento de la importancia del sector agrícola como actividad necesaria para producir alimentos, generar empleos, conservar el ambiente, y con el fin de promover el uso de los terrenos agrícolas de alta productividad, aprobó las leyes Núm. 277 de 20 de agosto de 1999[5], Núm. 142 de 4 de agosto de 2000[6] y Núm. 184 de 17 de agosto de 2002[7], con el propósito de proteger los terrenos de alto rendimiento agrícola comprendidos dentro de los valles de Lajas, Coloso y Guanajibo.

Mediante la aprobación de dichas leyes, se le encomendó a la Junta, en coordinación con el Departamento de Agricultura de Puerto Rico, llevar a cabo los estudios necesarios de las fincas comprendidas dentro de los denominados valles de Lajas, Coloso y Guanajibo, para el ordenamiento de esos terrenos mediante la promulgación y adopción de una resolución de zonificación especial, a los fines de reservar y destinar las fincas de los referidos valles a la producción y desarrollo agrícola.

---

[4] 23 L.P.R.A. sec. 62j(4) y (5).

[5] 23 L.P.R.A. sec. 7030 *et seq.*

[6] 5 L.P.R.A. sec. 1731 *et seq.*

[7] 5 L.P.R.A. sec. 1751 *et seq.*

En cumplimiento con las leyes antes citadas y como parte de la preparación de un reglamento de zonificación especial para las reservas agrícolas de Puerto Rico, la Junta celebró vistas públicas, los días 15 y 19 de febrero de 2002. Se discutió lo relacionado a los mapas correspondientes a las reservas agrícolas de Lajas y Coloso. En una segunda vista pública, celebrada los días 12 y 13 de febrero de 2003, se presentó nuevamente la delimitación de las reservas agrícolas de Lajas y Coloso modificadas, se incluyó la delimitación del Valle de Guanajibo y el propuesto Reglamento de Zonificación Especial para las Reservas Agrícolas de Puerto Rico.[8] Alega la Junta que las audiencias públicas se celebraron en los municipios de San Juan, Mayagüez, Lajas, Aguada y Sabana Grande, según fueron señaladas.[9]

El 5 de diciembre de 2003, la Junta, mediante Resolución, adoptó el Reglamento de Zonificación Especial para las Reservas Agrícolas de Puerto Rico, Reglamento de Planificación Núm. 28, en adelante el Reglamento de Planificación Núm. 28.[10] **Los Mapas de Delimitación y Zonificación Especial para las Reservas Agrícolas de los**

---

[8] Apéndice del Recurso de <u>Certiorari</u> ante nos (en adelante "Apéndice"), pág. 27.

[9] Petición de <u>Certiorari</u>, pág. 6.

[10] Resolución JP-RP-2003, Reglamento de Zonificación Especial para las Reservas Agrícolas de Puerto Rico, Núm. 28, Junta de Planificación de Puerto Rico, 13 de febrero de 2004. <u>Véase además</u>, Apéndice, págs. 27-29.

**valles de Lajas, Coloso y Guanajibo se hicieron formar parte integral del Reglamento.**[11]

El 23 de enero de 2004, mediante la Orden Ejecutiva OE-2004-08, la Gobernadora de Puerto Rico, Honorable Sila M. Calderón, aprobó el Reglamento de Planificación Núm. 28, *supra*, y los Mapas de Delimitación y Zonificación Especial para las Reservas Agrícolas de los valles de Lajas, Coloso y Guanajibo. Dicho Reglamento entró en vigor el 7 de febrero de 2004.[12]

Así las cosas, el 8 de marzo de 2004, el Frente Unido Pro Defensa del Valle de Lajas, la Asociación de Agricultores de Puerto Rico, el Colegio de Agrónomos de Puerto Rico y Louis G. Meyer, en adelante el Frente Unido, instaron oportunamente un recurso de revisión administrativa ante el Tribunal de Apelaciones. Impugnaron la aprobación del referido reglamento en cuanto a la delimitación de la Reserva Agrícola del Valle de Lajas. Alegaron que la Junta erró al excluir de los límites de la Reserva Agrícola del Valle de Lajas terrenos con acceso a riego y alta productividad agrícola, en contravención a lo

---

[11] Íd.

[12] Conforme al Artículo 28 de la Ley Núm. 75 de 24 de junio de 1975, según enmendada, 23 L.P.R.A. sec. 63 y a la sección 2.8 de la Ley de Procedimiento Administrativo Uniforme de Puerto Rico, Ley Núm. 170 de 12 de agosto de 1988, según enmendada, 3 L.P.R.A. sec. 2128(a)(1), los reglamentos adoptados por la Junta de Planificación y aprobados por el Gobernador, entrarían en vigor a los quince (15) días de su aprobación.

dispuesto en el artículo 2 de la Ley Núm. 277 de 20 de agosto de 1999, *supra*.[13]

Por su parte, la Junta adujo que el motivo de la exclusión de los terrenos en controversia se debió a que los mismos fueron afectados por desarrollos no agrícolas y a que su condición natural no exhibía las características propias de suelos de alta productividad agrícola. Además, añadió, que debido a que estos terrenos representan el crecimiento natural y futuro del Municipio de Lajas y tomando en consideración que este Municipio necesita espacio para su desarrollo y crecimiento urbano, decidieron excluir tales terrenos colindantes con el área urbana y construida, de la delimitación de la Reserva.[14]

El 25 de junio de 2004, el Tribunal de Apelaciones dictó Sentencia, archivada en autos copia de su notificación a las partes el 9 de julio de 2004, mediante la cual revocó la Resolución recurrida y declaró inválido el Reglamento de Planificación Núm. 28, *supra*. Determinó que la actuación de la Junta de excluir terrenos con acceso a riego de la Reserva Agrícola del Valle de lajas, es contraria al mandato legislativo establecido en el artículo 2 de la Ley Núm. 277 de 20 de agosto de 1999, *supra*, por lo que actuó de manera arbitraria y caprichosa.[15]

---

[13] Apéndice, pág. 44.

[14] Íd., págs. 4-5.

[15] Íd., pág. 13.

Oportunamente, el 28 de julio de 2004, el Frente Unido presentó moción de reconsideración solicitando que la sentencia se limitara en su aplicación a la Reserva Agrícola del Valle de Lajas y a los mapas que delimitan el área comprendida en ella.[16]

El 26 de agosto de 2004, el Tribunal de Apelaciones emitió resolución, archivada en autos copia de su notificación el 13 de septiembre de 2004, declarando con lugar la moción de reconsideración presentada por el Frente Unido. En dicha resolución se modificó la Sentencia del 25 de junio de 2004, limitando el alcance de la misma a declarar inválida la aplicación del Reglamento de Planificación Núm. 28, *supra*, sobre la Reserva Agrícola del Valle de Lajas, sin alcanzar ni invalidar la aplicación del referido reglamento a las otras reservas agrícolas.[17]

El 26 de agosto de 2004, la Junta presentó "Solicitud de Dispensa para Unirnos a la Moción de Reconsideración de la Parte Recurrente y para Hacer otros Planteamientos, entre ellos uno Jurisdiccional" y una "Moción de Desestimación por Falta de Jurisdicción, de Reconsideración y en Apoyo a Otro de la Parte Recurrente."[18]

En ellas, la Junta alegó, en síntesis, que debido a un error de oficina en el manejo de la correspondencia, no

---

[16] Íd., págs. 200-202.

[17] Entiéndase que tal dictamen no se extendería a las Reservas Agrícolas de los Valles de Coloso y Guanajibo.

[18] Apéndice, págs. 203-215.

tuvo oportunidad de reaccionar a la moción de reconsideración del Frente Unido dentro del término dispuesto por el Reglamento del Tribunal de Apelaciones.[19] Por lo cual, desconociendo de su presentación, acudió prematuramente al Tribunal Supremo de Puerto Rico mediante recurso de *certiorari*.[20] Indicó, además, que la exclusión de los terrenos con acceso a riego de la Reserva Agrícola del Valle de Lajas se llevó a cabo por insistencia del municipio de Lajas, al éste entender que los terrenos no tenían valor agrícola por estar localizados cerca del pueblo y por la tendencia natural de crecimiento poblacional en esa dirección.[21] Finalmente, la Junta señaló que el recurso de revisión administrativo se le notificó únicamente a ella y no al municipio de Lajas, parte interesada, indispensable y directamente afectada por la determinación a tomarse, por lo que se actuó en contravención a lo dispuesto en el Reglamento del Tribunal de Apelaciones, *supra*, y en la jurisprudencia dictada por este Tribunal. Concluyó que cualquier sentencia que se dicte sin la inclusión del municipio de Lajas como parte, adolece de nulidad por falta de jurisdicción.[22]

---

[19] In re Aprobación Reglamento TCA, res. 21 de julio de 2004, 162 D.P.R. ___ (2004), 2004 T.S.P.R. 121.

[20] Apéndice, págs. 203-205. Este recurso recibió el número CC-2004-729 y se ordenó el archivo del mismo por desistimiento, mediante Resolución de 27 de septiembre de 2004.

[21] Íd., pág. 206.

[22] Íd., págs. 206-215.

El 1 de septiembre de 2004, el Tribunal de Apelaciones emitió una Resolución, en la que determinó lo siguiente:

> A la moción de desestimación y de reconsideración de la Junta de Planificación, no ha lugar. Véase la Regla 84(A) de nuestro Reglamento de 20 de julio de 2004, 2004 J.T.S. 112.[23]

Inconforme con la resolución del foro intermedio apelativo, el 13 de octubre de 2004, la Junta acudió ante nos mediante el presente recurso de *Certiorari*. Señaló como errores los siguientes:

> **Erró el Honorable Tribunal de Apelaciones al declararse sin jurisdicción para entender y resolver en los méritos los planteamientos de la aquí Peticionaria contenidos en su escrito ante dicho foro titulado: Moción de Desestimación por Falta de Jurisdicción, de Reconsideración y en Apoyo a Otra de la Parte Recurrente.**

> **Erró el Tribunal de Apelaciones al concluir que la exclusión de terrenos con acceso a riego de la Reserva Agrícola del Valle de Lajas es contrario al mandato legislativo establecido en el Artículo 2 de la Ley Núm. 277 del 20 de agosto de 1999, según enmendada, 23 L.P.R.A., sec. 7031.**

Contando con la comparecencia de ambas partes, estamos en posición de resolver.

II

La Regla 47 de Procedimiento Civil[24] establece, en lo pertinente, lo siguiente:

---

[23] Íd., pág. 22.

[24] 32 L.P.R.A. Ap. III, R. 47.

> **La parte adversamente afectada por una resolución final o sentencia del Tribunal de Circuito de Apelaciones podrá, dentro del término improrrogable de quince (15) días desde la fecha del archivo en los autos de una copia de la notificación de la resolución o sentencia, presentar una moción de reconsideración.** El término para apelar o recurrir al Tribunal Supremo comenzará a contarse de nuevo a partir del archivo en autos de copia de la notificación de la resolución o sentencia del Tribunal de Circuito de Apelaciones resolviendo definitivamente la moción de reconsideración. (Énfasis Suplido)

La Regla 53.1 (h)[25] de dicho cuerpo reglamentario establece que una **oportuna** moción de reconsideración presentada ante el Tribunal de Apelaciones, interrumpe el transcurso del término para presentar ante el Tribunal Supremo una solicitud de *certiorari*.

En ocasiones anteriores, este Tribunal ha expresado que el término de quince días (15) para presentar una moción de reconsideración es uno jurisdiccional.[26]

La sección 2 del Artículo V de la Constitución de Puerto Rico[27] y el artículo 4.004 de la Ley de la Judicatura de 2003, según enmendada,[28] facultan al Tribunal Supremo de Puerto Rico a aprobar las reglas internas que regirán los procedimientos y la organización del Tribunal de

---

[25] 32 L.P.R.A. Ap. III, R. 53.1(h).

[26] Reyes v. E.L.A., et al., res. 7 de diciembre de 2001, 155 D.P.R.___(2001), 2001 T.S.P.R. 168; Vega Maldonado v. Alicea Huacuz, 145 D.P.R. 236, 240 (1998); Barletta v. Tribunal Superior, 100 D.P.R. 690, 692 (1972).

[27] Artículo V, Sección 2, Constitución del E.L.A., 1 L.P.R.A.

[28] 4 L.P.R.A. sec. 24w.

Apelaciones. El 20 de julio de 2004 aprobamos el Reglamento del Tribunal de Apelaciones, *supra*. Este Reglamento entró en vigor inmediatamente después de su aprobación y el mismo es aplicable a todos los procedimientos pendientes ante el Tribunal de Apelaciones.[29]

El Reglamento del Tribunal de Apelaciones, *supra*, establece las reglas a aplicar a todos los recursos presentados ante el Tribunal de Apelaciones y las específicamente aplicables al proceso de revisión de decisiones administrativas. En cuanto a las mociones de reconsideración, la Regla 84 del Reglamento del Tribunal de Apelaciones, *supra*, dispone lo siguiente:

> **(A) Cualquier moción de reconsideración sobre cualquier asunto civil o criminal, deberá ser presentada dentro del plazo improrrogable de quince (15) días contados a partir del archivo en autos de copia de la notificación de la resolución o sentencia del Tribunal de Apelaciones.**
>
> **La presentación oportuna de una moción de reconsideración paralizará los términos para apelar o recurrir ante el Tribunal Supremo.**
>
> El término para apelar o recurrir al Tribunal Supremo comenzará a contarse de nuevo a partir del archivo en autos de copia de la notificación de la resolución o sentencia del Tribunal de Apelaciones que resuelva definitivamente moción de reconsideración.
>
> (B) La moción de reconsideración discutirá solo los asuntos específicos respecto de los cuales la parte promovente considere que el Tribunal erró en la determinación de hecho o en la aplicación del derecho.

---

[29] In re Aprobación Reglamento TCA, *supra*, R. 89.

> **Dentro de diez (10) días desde la presentación de la moción o en el término que determine el Tribunal, la parte promovida podrá presentar su oposición, luego de lo cual la moción de reconsideración quedará sometida para adjudicación.** El Tribunal podrá resolver una moción de reconsideración en cualquier momento.(...)(Énfasis suplido)

También es norma conocida en nuestro ordenamiento que las cuestiones de jurisdicción son de índole privilegiada y deben ser resueltas con preferencia.[30] Todo tribunal tiene el deber ministerial de, una vez cuestionada su jurisdicción o *motu proprio*, examinar y evaluar rigurosamente tal asunto pues éste incide directamente sobre el poder mismo para adjudicar una controversia.[31] Por ser éste un planteamiento de naturaleza privilegiada, puede hacerse en cualquier etapa del procedimiento,[32] entiéndase ante el foro primario o en etapa apelativa. No obstante, el hecho de que pueda presentarse en cualquier etapa no significa que no deban utilizarse los mecanismos procesales adecuados con sus respectivos términos de presentación. Si se va a levantar alguna cuestión jurisdiccional ante el Tribunal de Apelaciones, mediante una moción de reconsideración, ésta debe hacerse dentro del término jurisdiccional de quince (15) días dispuesto por ley. Si es

---

[30] Carattini v. Collazo Syst. Analysis, Inc., res. 3 de enero de 2003, 158 D.P.R.___ (2003); 2003 T.S.P.R. 1.

[31] Íd; Souffront et al. v. A.A.A., res. 21 de abril de 2005, 164 D.P.R.___ (2005); 2005 T.S.P.R. 49.

[32] Vázquez v. A.R.P.E., 128 D.P.R. 513 (1991).

presentada tardíamente, la misma no podrá ser atendida por ese foro.

En el caso ante nos, el Tribunal de Apelaciones, en su Resolución del 1 de septiembre de 2004, declaró no ha lugar la moción de desestimación y de reconsideración presentada por la Junta. Sostuvo su dictamen en lo dispuesto en la Regla 84(A) del Reglamento del Tribunal de Apelaciones, *supra,* la cual establece que toda moción de reconsideración debe ser presentada en un plazo improrrogable de quince (15) días, contados a partir del archivo en autos de copia de la notificación de la resolución o sentencia del Tribunal de Apelaciones.

De los autos surge que la sentencia del Tribunal de Apelaciones se dictó el 25 de junio de 2004, archivada en autos copia de su notificación a las partes el 9 de julio de 2004. De conformidad con lo expuesto en la disposición citada, cualquier moción de reconsideración debía ser presentada dentro del término jurisdiccional e improrrogable de quince (15) días, el cual vencía el sábado 24 de julio, que se extendió hasta el próximo día laborable, miércoles 28 de julio de 2004.[33] No fue hasta el 26 de agosto de 2004, pasado el plazo improrrogable de quince (15) días, que la Junta presentó ante el Tribunal de Apelaciones su solicitud de dispensa para unirse a la moción de reconsideración del Frente Unido y la moción de desestimación y de reconsideración.

---

[33] 32 L.P.R.A. Ap. III, R. 68.1.

A la luz de lo anterior, concluimos que **la moción instada por la Junta fue presentada tardíamente**. Aunque en su moción la Junta alegó un problema de jurisdicción, no deja de ser una moción de reconsideración que debía ser presentada dentro del término jurisdiccional correspondiente para poder ser atendida por el Tribunal de Apelaciones.

La moción de reconsideración presentada oportunamente por el Frente Unido el 28 de julio de 2004, ante el Tribunal de Apelaciones, interrumpió el término jurisdiccional para que cualquiera de las partes acudiera en alzada al Tribunal Supremo. No obstante, no paralizó el término para que la Junta presentara su moción de reconsideración. Si la Junta interesaba que fuera el Tribunal de Apelaciones quien resolviera el planteamiento de jurisdicción, tenía que plantearlo en su alegato ante tal foro, o presentar una moción de reconsideración en el término jurisdiccional de quince días (15). En vista de que no cumplió con el término jurisdiccional para presentar su moción de reconsideración, actuó correctamente el Tribunal de Apelaciones al declararla no ha lugar por presentación tardía.

No obstante, la Junta acudió oportunamente ante nos e impugnó la jurisdicción del Tribunal de Apelaciones. Alega que la sentencia dictada por dicho foro fue emitida sin autoridad y facultad para hacerlo. Tal como mencionamos al exponer la doctrina sobre falta de jurisdicción, esta Curia

puede auscultar ese asunto por ser una materia privilegiada que puede ser examinada en cualquier etapa del procedimiento, incluso en esta etapa final.

Veamos, pues, los méritos del planteamiento de falta de jurisdicción alegado por la Junta ante el Tribunal de Apelaciones, asunto que no fue atendido por ese Tribunal, por los motivos previamente indicados.

III

A.

**Definiciones**: **Distinción proceso de reglamentación y adjudicación.**

La Ley de Procedimiento Administrativo Uniforme, en adelante L.P.A.U., Ley Núm. 170 de 12 de agosto de 1988, según enmendada[34], establece las características y requisitos que las agencias administrativas deben cumplir en los procesos de reglamentación y de adjudicación. La exposición de motivos de dicha ley lee, en lo pertinente, como sigue:

> La medida sistematiza y crea un cuerpo uniforme de reglas mínimas que toda agencia deberá observar al formular reglas y reglamentos que definan los derechos y deberes legales de una clase particular de personas. Contiene, además, otro cuerpo de normas distintas para gobernar las determinaciones de una agencia en procesos adjudicativos al emitir una orden o resolución que define los derechos y deberes legales de personas específicas.[35]

---

[34] 3 L.P.R.A. sec. 2101 *et seq.*

[35] Exposición de Motivos de la L.P.A.U., *supra*.

Los procesos adjudicativos y de reglamentación son diferentes. El proceso de adjudicación es uno cuasi-judicial y de reglamentación es uno cuasi-legislativo.

Es importante, precisar cuáles son las definiciones provistas por la L.P.A.U., *supra*, referente a los términos o frases utilizados en los diferentes procesos administrativos. Ese estatuto define el concepto de reglamentación como aquél sujeto a un procedimiento mediante el cual una agencia formula, adopta, enmienda o deroga una regla o reglamento.[36] Además, define regla o reglamento de la forma siguiente:

> ...cualquier norma o conjunto de normas de una agencia que **sea de aplicación general** que ejecute o interprete la política pública o la ley, o que regule los requisitos de los procedimientos o prácticas de una agencia. El término incluye la enmienda, revocación o suspensión de una regla existente. (...)[37] (Énfasis suplido)

La L.P.A.U., *supra*, dispone sobre el proceso que debe cumplir una agencia administrativa para aprobar un reglamento y el alcance de la participación de la ciudadanía durante la conducción del mismo. Establece el mínimo de participación ciudadana que la adopción de un reglamento puede tener. En su sección 2127, dispone cómo y en cuanto tiempo un reglamento puede ser impugnado de su faz. Dicha disposición estatutaria lee de la forma siguiente:

---

[36] 3 L.P.R.A. sec. 2102(m).

[37] 3 L.P.R.A. sec. 2102(l).

(a) Una regla o reglamento aprobado después de la fecha de efectividad de este capítulo será nulo si no cumpliera sustancialmente con las disposiciones de este capítulo.

**(b) Cualquier acción para impugnar la validez de su faz de una regla o reglamento por el incumplimiento de las disposiciones de este capítulo deberá iniciarse en el Tribunal de Circuito de Apelaciones dentro de los treinta (30) días siguientes a la fecha de vigencia de dicha regla o reglamento. La competencia sobre la acción corresponderá al Circuito de la región judicial donde está ubicado el domicilio del recurrente.**

(c) La acción que se inicie para impugnar el procedimiento seguido al adoptar las reglas o reglamentos de que se trate no paralizará la vigencia de los mismos, a menos que la ley al amparo de la cual se adopta disponga expresamente lo contrario. (Énfasis Suplido)[38]

Cualquier persona puede impugnar la validez de una regla o reglamento aprobado por una agencia administrativa por el incumplimiento de las disposiciones de la L.P.A.U., *supra*, dentro del término de treinta (30) días, haya participado o no durante la celebración de las vistas públicas celebradas, como parte del proceso para su aprobación. No tiene que ser afectado por la aplicación de dicha regla o reglamento para tener la capacidad para promover la referida impugnación ante el Tribunal de Apelaciones. No obstante, cualquier persona afectada por la aplicación de una regla o reglamento aprobado por una agencia administrativa podrá impugnar la validez

---

[38] Íd., sec. 2127.

constitucional del mismo, en cualquier momento, ante el Tribunal de Primera Instancia.[39]

En el primer error señalado, la Junta alega que durante el proceso de preparación del reglamento y delimitación de las reservas agrícolas, participaron los municipios que tienen comprendidos parte de sus terrenos en la Reserva Agrícola del Valle de Lajas. Señala la Junta que "[e]specialmente el municipio de Lajas, a través de su alcalde, tuvo una participación activa e intensa en el proceso, incluyendo su comparecencia a las vistas públicas celebradas."[40] Alega la Junta que los municipios de Sabana Grande, San Germán, Cabo Rojo, Guánica, Yauco y especialmente Lajas **eran partes** que tenían derecho a que se les notificara con copia del recurso de revisión, instado ante el Tribunal de Apelaciones, y que al no haber sido notificados con copia del mismo, dicho foro intermedio apelativo dictó una sentencia sin jurisdicción para actuar. Sostuvo su planteamiento en Lugo Rodríguez v. Junta de Planificación.[41] No le asiste la razón. Allí establecimos que los que participan activamente durante un procedimiento administrativo adjudicativo y cuyos derechos y obligaciones puedan verse afectados por la acción o inacción de la agencia, son "parte", por lo que es necesario se les

_____

[39] Asoc. Dueños Casas Parguera, Inc. v. J.P., 148 D.P.R. 307 (1999).

[40] Recurso de Certiorari, pág. 13.

[41] 150 D.P.R. 29.

notifique con copia del recurso de revisión instado ante el Tribunal de Apelaciones. Ese no es el caso ante nos.

El proceso de **reglamentación** es uno de **aplicación general** y no uno de aplicación particular, en el que se adjudican derechos u obligaciones de una o más personas específicas, como sucede en un proceso adjudicativo. En el proceso de adopción de una regla o reglamento no se adjudica una controversia entre una o más personas específicas, es decir entre partes, sino que se establece una norma de aplicación general. Así pues, a diferencia de la **adjudicación**, en la que la expedición de órdenes de aplicación particular determina los derechos y obligaciones de partes específicas, la **reglamentación** dispone sobre la promulgación de reglas de aplicación general que encarnan una política o prescriben una norma legal.[42] Por ser de aplicación general, el proceso de formulación y de aprobación de reglamentación conducido por las diferentes agencias administrativas en nuestra jurisdicción, afecta a la comunidad. Respecto a esta distinción, en <u>Luan Investment Corp. v. Román,</u>[43] indicamos lo siguiente:

> Los mapas de zonificación y sus enmiendas representan la forma visual y práctica de instrumentar los reglamentos de zonificación y sus enmiendas. Su aprobación y enmiendas no son actos de naturaleza adjudicativa, dirigidos a resolver una controversia entre una o más personas, sino que son actos

---

[42] D. Fernández Quiñones, <u>Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme</u>, 2da ed., Colombia, Forum, 2001, pág. 108.

[43] 125 D.P.R. 533 (1990).

> productos de los instrumentos con los cuales el Estado ha provisto a la Junta para reglamentar el uso de la tierra en Puerto Rico, de manera que se logre un desarrollo integral y balanceado de nuestra sociedad.[44]

Surge de lo antes citado, que el caso ante nos, por ser un proceso para aprobar un reglamento de zonificación y para delimitar unos mapas de zonificación, es un proceso cuasi-legislativo y no de naturaleza adjudicativa.

Es "parte" aquél que participa activamente en un proceso administrativo adjudicativo y cuyos derechos y obligaciones pueden verse afectados por la actuación de la agencia. No obstante, el caso <u>Lugo Rodríguez v. Junta de Planificación</u>, *supra*, en el cual hicimos tal pronunciamiento, se trataba de un proceso adjudicativo, en el cual se sometió ante la Junta de Planificación una consulta de ubicación que proponía el desarrollo de un proyecto comercial. Diferente es este caso, pues estamos ante un proceso de reglamentación, donde no existen partes como tal ante la agencia y no se hace ninguna determinación específica sobre sus derechos y obligaciones, sino que se establecen normas de aplicación general.

La Ley Orgánica de la Junta, Ley Núm. 75, de 24 de junio de 1975, *supra*, provee para que antes de adoptar o enmendar un reglamento, la Junta celebre vistas públicas luego de dar aviso al público, de la fecha, sitio y naturaleza de la celebración de las mismas. La L.P.A.U., *supra*, no le requiere a las agencias que provean una

---

[44] Íd., pág. 547.

participación ciudadana análoga a la de los procedimientos adjudicativos. De hecho, las agencias administrativas tienen discreción para citar a vistas públicas y la misma sólo será obligatoria en los casos en que el estatuto orgánico de la agencia lo requiera.[45] No podemos considerar como "parte" a todas las personas que participan activamente durante la celebración por la Junta de las vistas públicas. Considerar como "parte" a esas personas y garantizarle todos los derechos que ello implica en un proceso adjudicativo, es contrario al ordenamiento establecido en la L.P.A.U., *supra*, y a la naturaleza misma del proceso cuasi-legislativo de reglamentación.

Es en los procesos de adjudicación, ya sea por una querella ante la agencia o cuando se solicita algún permiso o autorización que otra parte objeta, donde existen partes adversas respecto a algún asunto, y por tanto, una controversia ante la agencia. Por el contrario, el proceso dirigido a la formulación y aprobación de un reglamento que conducen las agencias administrativas, no es un procedimiento en el que partes adversas dilucidan sus derechos y obligaciones, y en el que se adjudica una controversia. La regla o reglamento pautado por la agencia puede ser impugnado al entrar en vigor, comenzando así el proceso de revisión judicial de su aprobación.[46] Una vez se presenta el recurso de revisión ante el Tribunal de

---

[45] 3 L.P.R.A. sec. 2123.

[46] 3 L.P.R.A. sec. 2127.

Apelaciones con tal propósito, el que impugna la actuación administrativa es el recurrente y la agencia pertinente, la recurrida; sólo entonces es que existe un proceso adversativo ante un tribunal, y por lo tanto, "partes" ante ese foro.

Requerir que se notifique de la presentación de un recurso de revisión judicial ante el Tribunal de Apelaciones a todas las personas que comparecen y participan activamente en las vistas públicas celebradas ante una agencia administrativa, durante un proceso dirigido a la aprobación de determinado reglamento, haciendo recomendaciones, reseñando inquietudes o aportando información, sería trastocar dicho procedimiento y alterar su naturaleza. Resulta excesivamente oneroso para la parte que quiera impugnar un reglamento de su faz, el tener que cumplir con tal requisito. Formular una norma jurisprudencial para establecer dicho requisito sería crear mediante fiat judicial una normativa nueva, contraria a la dispuesta en la L.P.A.U., *supra*, para el proceso de reglamentación conducido por las agencias administrativas.

No actuó sin jurisdicción el Tribunal de Apelaciones. Resolver lo contrario, o sea acceder a la petición de la Junta de que debía notificarse con copia del recurso de revisión al municipio de Lajas y a los otros municipios, sería desnaturalizar el proceso de reglamentación que deben seguir las agencias administrativas y además, sería girar

en contra de la propia intención legislativa claramente establecida en la L.P.A.U., *supra*.

En conclusión, por no existir "partes" a quienes se dirija específicamente la acción de la agencia en este caso, no es de aplicación el requisito de notificar con copia del recurso de revisión administrativa ante el Tribunal de Apelaciones a aquellas personas naturales o jurídicas que hayan participado en las vistas públicas ante la agencia. La ley señala que es "parte" el promovente, el promovido, el interventor y aquél designado como tal. Los referidos municipios no fueron parte promovida, promovente, o interventora, pues no se trató aquí de un proceso de adjudicación ante la agencia, sino de un proceso de reglamentación. Los municipios aludidos no son "parte" a los efectos de la notificación requerida por la sección 4.2 de la L.P.A.U., *supra*, y del Reglamento del Tribunal de Apelaciones, *supra*.

Concluimos que el requisito de notificación a las partes que se establece en la sección 4.2 de la L.P.A.U., *supra,* a todas luces, se refiere únicamente al proceso de adjudicación ante una agencia administrativa y no al de reglamentación.

IV

La Asamblea Legislativa, mediante la aprobación de la Ley Núm. 277, *supra*, reconoció expresamente la importancia agrícola de los terrenos que componen el Valle de Lajas. La

aprobación de dicha ley obedeció al objetivo de continuar el desarrollo de la agricultura en esa región, por lo que se declaró el Valle de Lajas como una reserva agrícola.[47]

En la Exposición de Motivos de la Ley Núm. 277, *supra*, la Asamblea Legislativa explica las razones por las cuales interesa proteger la Reserva Agrícola del Valle de Lajas. Expresa, en lo que nos atañe, lo siguiente:

> A medida que transcurren los años, el aumento en la población y **la demanda por áreas para desarrollo urbano obligan a las agencias reguladoras a trabajar en mayor coordinación para garantizar que las tierras con potencial agrícola sean preservadas para dichos fines exclusivamente.** Es de conocimiento que el Valle de Lajas, por su topografía llana y de fácil manejo constituye un gran atractivo para desarrollos residenciales, comerciales, industriales, turísticos y recreativos. Sin embargo, una planificación adecuada de las actividades agrícolas en todo el Valle de Lajas y un eficiente mantenimiento y operación del sistema de riego puede volver a convertir estos terrenos en el granero de Puerto Rico, ya que son ideales para las siembras de maíz, arroz, habichuelas y sorgo, entre otras cosechas.
>
> La preservación de los terrenos del Valle de Lajas para el desarrollo agrícola requiere del establecimiento de una **política pública enérgica que contribuya al cumplimiento de estos propósitos, y conlleva el establecimiento de una zonificación especial y claramente definida.** También es necesario que se fomente el establecimiento de nuevas empresas agrícolas que contribuyan al desarrollo económico de la zona y por consiguiente, a la creación de empleos en este sector de la economía. **Con la zonificación agrícola de estos terrenos se evitará el desarrollo desarticulado de otras**

---

[47] *Frente Unido v. Secretario de Justicia*, 151 D.P.R. 117, 125 (2000).

**empresas o desarrollos no agrícolas y se garantizará la preservación de estos terrenos para generaciones futuras.**

La Asamblea Legislativa, en atención a la **necesidad primordial de aprovechar al máximo** estos terrenos de alto rendimiento agrícola para beneficio del Pueblo de Puerto Rico, declara los terrenos comprendidos dentro del Valle de Lajas como una reserva agrícola y ordena a la Junta de Planificación, en coordinación con el Departamento de Agricultura, el establecimiento de una zonificación especial para el ordenamiento de esos terrenos.(Énfasis suplido.)

Con el propósito de continuar con el desarrollo de la agricultura en la región suroeste de Puerto Rico, la Asamblea Legislativa declaró el Valle de Lajas como una reserva agrícola y ordenó adoptar una resolución de zonificación especial para reservar y destinar las fincas comprendidas dentro de dicho Valle a la producción y desarrollo agrícola.[48] En el Artículo 2 de la Ley Núm. 277, *supra,* se indica lo siguiente:

La Junta de Planificación, en coordinación con el Departamento de Agricultura, deberá llevar a cabo todos los estudios necesarios de las fincas comprendidas dentro del denominado Valle de Lajas, para el ordenamiento de esos terrenos mediante la promulgación y adopción de una Resolución de Zonificación Especial, a los fines de reservar y destinar las fincas del referido Valle a la producción y desarrollo agrícola. Para este propósito, podrá requerir a todo ente gubernamental o privado, apoyo pericial o de campo. **En la Zonificación Especial deben estar incluidas además de las tierras que actualmente tienen acceso a riego, aquellas que en el futuro puedan tenerlo y que se identifiquen como de valor agrícola.**

---

[48] Artículos 1 y 2 de la Ley Núm. 277, *supra*, 23 L.P.R.A. secs. 7030-7031.

**De igual forma, aquellas tierras que colinden con las identificadas como de valor agrícola y que sirvan de zonas de amortiguamiento deberán estar incorporadas en la Zonificación Especial.**(Énfasis suplido)[49]

De forma clara y expresa, el legislador ordenó que los siguientes terrenos debían ser incluidos en la Zonificación Especial: los predios que actualmente tienen acceso a riego; aquellos que en el futuro puedan tenerlo y se identifiquen como de valor agrícola; y los que colindan con los identificados como de valor agrícola y sirvan de zonas de amortiguamiento.[50]

En la esfera administrativa, la ley es la fuente legal o el medio que le confiere el poder a una agencia administrativa para velar por el cumplimiento de su ley habilitadora.[51] La ley habilitadora es el mecanismo legal que autoriza y delega a la agencia administrativa los poderes para que actúe conforme al propósito perseguido en dicha ley.[52] Por lo cual, un reglamento promulgado por una agencia administrativa no puede estar en conflicto con la ley habilitadora.[53] La función de los tribunales, ante un recurso de revisión judicial de un reglamento, consiste en

---

[49] 23 L.P.R.A. sec. 7031.

[50] Frente Unido v. Secretario de Justicia, *supra*, pág. 125.

[51] Caribe Comms., Inc. v. P.R.T.Co., res. 18 de junio de 2002, 157 D.P.R.___ (2002); 2002 T.S.P.R. 83.

[52] Íd.

[53] Pérez v. Com. Rel. Trab. Serv. Pub., res. 4 de octubre de 2002, 158 D.P.R.___ (2002); 2002 T.S.P.R. 133; Franco v. Depto. de Educación, 148 D.P.R. 703 (1999).

examinar la validez de una reglamentación de una agencia administrativa. Tal ejercicio ha de ir dirigido a evaluar: (1) si la actuación administrativa está autorizada por ley; (2) si se delegó poder de reglamentación; (3) si la reglamentación promulgada está dentro de los amplios poderes delegados; (4) si al aprobarse el reglamento se cumplió con las normas procesales de la ley orgánica y de las leyes especiales, y (5) si la reglamentación es arbitraria o caprichosa.[54]

Los tribunales no deben perder de perspectiva que "un reglamento promulgado para implementar [sic] la ejecución de una ley **puede complementarla, pero no estar en conflicto con ésta.**"(Énfasis suplido)[55] Si el reglamento está en conflicto con la ley habilitadora que permite y promueve su creación, la disposición reglamentaria tiene que ceder ante el mandato legislativo.[56] Un reglamento es nulo si claramente está en conflicto o en contra de la ley.[57]

En el caso ante nos, la Junta, al expedir su resolución para adoptar el Reglamento de Planificación Núm. 28, *supra*, excluyó de la zonificación especial terrenos que

---

[54] Asoc. Fcias. Com. v. Depto. de Salud, res. 5 de febrero de 2002, 156 D.P.R.___ (2002); 2002 T.S.P.R. 13; Franco v. Depto. de Educación, *supra*, pág. 711; M.& B.S., Inc. v. Depto. de Agricultura, 118 D.P.R. 319, 326 (1987).

[55] Asoc. Fcias. Com. v. Depto. de Salud, *supra*; Pérez v. Com. Rel. Trab. Serv. Pub., *supra*; P.S.P. v. Comisión Estatal de Elecciones, 110 D.P.R. 400, 409 (1980)

[56] Pérez v. Com. Rel. Trab. Serv. Pub., *supra*.

[57] P.S.P. v. Comisión Estatal de Elecciones, *supra*.

actualmente tienen acceso a riego. En dicha resolución expresó lo siguiente:

> Se reconoce que al Este del Municipio de Lajas y al Sur de la Carretera PR-117, aunque son terrenos servidos por el sistema de riego, han sido afectados por desarrollos no agrícolas. Asimismo, el Municipio de Lajas necesita espacio para su desarrollo y crecimiento urbano, aspecto que estaba contemplado en el propuesto Plan Territorial de Lajas sometido en el año 1999. Por ello, en ánimo de atender el interés público de satisfacer dicho crecimiento, se excluyen de la delimitación de la Reserva aquellos terrenos que colindan con el área urbana y construida y que representan el crecimiento natural futuro de dicho municipio.[58]

La Junta expresó que tal exclusión se debió a que dichos terrenos fueron afectados por desarrollos no agrícolas y a que la condición natural de los mismos no exhibía las características propias de suelos de alta productividad agrícola.[59] También señaló que en vista de que el Municipio de Lajas necesita espacio para su desarrollo y crecimiento urbano, se excluyeron de la Reserva aquellos terrenos que colindan con el área urbana y construida, que representan el crecimiento natural futuro de dicho municipio.

Surge de la propia Ley 277, *supra,* que la Junta llevaría a cabo los estudios necesarios para adoptar el reglamento de zonificación especial en controversia en conjunto con el Departamento de Agricultura.[60] De la propia

---

[58] Resolución JP-RP-2003, *supra.*

[59] Apéndice, pág. 4.

[60] 23 L.P.R.A. sec. 7031.

resolución para adoptar el Reglamento de Planificación Núm. 28, *supra*, surge que el Departamento de Agricultura participó activamente en el proceso de preparación del reglamento, y durante la celebración de las vistas públicas. En su ponencia presentada ante la Junta el 12 de febrero de 2003, expresó que **los terrenos al margen este del Municipio de Lajas muestran condiciones adecuadas para ser identificados como de alto valor agrícola.**[61]

El Tribunal de Apelaciones entendió que la actuación de la Junta fue arbitraria y caprichosa, pues el Artículo 2 de la Ley Núm. 277, *supra*, no provee excepciones respecto a los terrenos con acceso a riego, por lo que dicha agencia erró al ejercer una discreción que no le confirió la Asamblea Legislativa. Determinó lo siguiente:

> De la letra del Artículo 2 de la Ley 277, id., se desprende claramente que el mero hecho de que las tierras tengan acceso a riego las incluye dentro de la zonificación especial. Ello es así independientemente de que esas tierras posean o no valor agrícola. Es para aquellas tierras que no poseen acceso a riego actualmente, pero que en el futuro puedan tener acceso a riego, que se requiere "que se identifiquen como de valor agrícola." Id.[62]

En el recurso presentado ante nos, la Junta arguye que el propósito de la Ley 277, *supra,* es que se incluyan dentro de la reserva agrícola los terrenos servidos por riego o que puedan servirse, pero que tengan valor

---

[61] Apéndice, pág. 136.

[62] Íd, págs. 9-10.

agrícola.[63] Alega, además, que el Tribunal de Apelaciones ignoró que los terrenos a incluirse en la reserva tienen que identificarse como de valor agrícola.

Aplicando la normativa antes expuesta, concluimos que la Junta excedió sus facultades al excluir de la delimitación de la Reserva Agrícola del Valle de Lajas los terrenos servidos por el sistema de riego descritos en la resolución para adoptar el Reglamento de Planificación Núm. 28, *supra*.

Cuando la ley es clara y libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu.[64] De igual manera, ante un lenguaje claro e inequívoco del legislador, el texto de la ley es la expresión por excelencia de la intención legislativa.[65] Interpretar la ley en forma contraria a la evidente intención del legislador, implicaría la usurpación de las prerrogativas de la rama legislativa.[66] Por estos motivos, los tribunales debemos siempre considerar cuáles fueron los propósitos perseguidos por la Asamblea Legislativa al aprobar una legislación, de manera que su interpretación asegure la efectividad de la intención legislativa.[67]

---

[63] Recurso de Certiorari, pág. 15.

[64] Art. 14 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 14.

[65] Pérez Pérez v. Mun. de Lares, res. 27 de noviembre de 2001, 155 D.P.R.___(2001); 2001 T.S.P.R. 160.

[66] Alejandro Rivera v. E.L.A., 140 D.P.R. 538 (1996).

[67] Pérez Pérez v. Mun. de Lares, *supra*.

El mandato legislativo de la Ley Núm. 277, *supra*, fue incluir en la zonificación especial las tierras que actualmente tienen acceso a riego.[68] Además, entendemos, a diferencia del Tribunal de Apelaciones, que estos terrenos tienen cierto valor agrícola. No es meramente que tengan acceso a riego lo que los hace elegibles para ser parte de la reserva, sino que sean terrenos con valor agrícola, que tengan acceso a riego. Deben tener valor agrícola para así promover el propósito que persigue la Ley 277, *supra*, el cual consiste en fomentar el desarrollo agrícola del Valle de Lajas y protegerlo de desarrollos no agrícolas. No surge de los autos que los terrenos excluidos carezcan de valor agrícola. No obstante, la Junta señala que se vieron afectados por desarrollos no agrícolas y que eran necesarios para el desarrollo y crecimiento urbano del Municipio de Lajas. Precisamente, una de las razones por la cual la Asamblea Legislativa le encomendó a la Junta, en coordinación con el Departamento de Agricultura, garantizar la protección de las tierras con potencial agrícola, fue proteger dichas tierras del desarrollo urbano, cuya demanda aumenta.[69]

El Departamento de Agricultura, a diferencia de la Junta, señala que el área excluida tiene un alto valor agrícola. Por lo tanto, podemos concluir que los terrenos excluidos sí tienen valor agrícola aunque el mismo haya

---

[68] Frente Unido v. Srio. de Justicia, *supra*.

[69] Véase, Exposición de Motivos de la Ley Núm. 277, *supra*.

disminuido por el impacto de desarrollos no agrícolas. La Ley 277, *supra,* no establece niveles de valor agrícola a observar para excluir o incluir terrenos en la reserva; meramente expresa que si tienen acceso a riego y valor agrícola, serán incluidos en la reserva.

De las disposiciones legales relacionadas con la promulgación y adopción de la Zonificación Especial para las Reservas Agrícolas se desprende que la intención del legislador fue establecer una **política pública enérgica** que contribuya a la preservación de los terrenos del Valle de Lajas para su desarrollo agrícola. La Asamblea Legislativa, al declarar los terrenos comprendidos dentro de los valles de Lajas, Coloso y Guanajibo como reservas agrícolas lo hizo en atención a la necesidad primordial de aprovechar al máximo el potencial agrícola de dichos terrenos.[70] No debemos olvidar que las leyes deben ser interpretadas y aplicadas "sin desvincularlas del problema cuya solución persiguen, como parte de un todo coherente y armonioso del ordenamiento jurídico".[71]

En vista del inequívoco mandato legislativo, la Junta actuó en forma *ultra vires,* más allá de su poder delegado, para aprobar un reglamento excluyendo de la Reserva Agrícola del Valle de Lajas terrenos servidos por el sistema de riego y con valor agrícola. El Tribunal de

---

[70] Íd.; Exposición de Motivos, Ley Núm. 142 de 4 de agosto de 2000 y Ley Núm. 184 de 17 de agosto de 2002, según enmendadas, *supra.*

[71] Franco v. Depto de Educación, *supra*, pág 716; J.R.T v. A.E.E., 133 D.P.R. 1, 10 (1993).

Apelaciones actuó correctamente al determinar que la Junta erró al realizar la exclusión de los referidos terrenos en controversia. Actuó correctamente al decretar como inválido el Reglamento de Planificación Núm. 28, *supra,* aprobado por esa agencia, en cuanto a su aplicación a la Reserva Agrícola del Valle de Lajas.

V

Por los fundamentos antes expuestos, se confirma la sentencia recurrida.

EFRAIN E. RIVERA PEREZ
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Junta de Planificación de Puerto
Rico

    Peticionario

       v.                     CC-2004-946

Frente Unido Pro Defensa Del
Valle de Lajas, Asociación de
Agricultores de P.R., Colegio de
Agrónomos de P.R.

    Recurridos

SENTENCIA

San Juan, Puerto Rico, a 26 de agosto de 2005

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se confirma la sentencia recurrida.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo