RESOLUCIÓN
Examinada la Primera Moción de Reconsideración presentada por la parte peticionaria, se provee “no ha lugar.”
Vistas la Moción para Presentar Alegato de LAMBDA Legal Defense and Education Fund y la Fundación Artículo II como Amigos del Tribunal; la Moción Solicitando Autorización para Comparecer como Amicus Curiae, del Ledo. Roberto García Cabrera; la Moción Solicitando Autorización para Comparecer como Amicus Curiae, del Ledo. Jorge A. Irizarry Rodríguez, y la Moción Solicitando Auto *381 rización para Comparecer como Amicus Curiae, del Dr. Wilkins Román Samot, se provee a todas “no ha lugar.”(1)
Atendida como una moción de reconsideración la Moción Informativa en Respuesta a Moción de Reconsideración y Solicitud de Autorización y Término para Presentar Postura del Estado en Relación a la Moción de Reconsideración de la Parte Peticionaria, presentada por la Procuradora General de Puerto Rico el 18 de marzo de 2013, se provee “no ha lugar” por falta de jurisdicción al haberse presentado fuera del término jurisdiccional de diez días laborables que provee la Regla 45 del Reglamento de este Tribunal, 4 LPRA Ap. XXI-B.

Notifíquese inmediatamente a las partes por teléfono, correo electrónico, fax y por la vía ordinaria.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal Supremo. El Juez Asociado Señor Martínez Torres hizo constar la expresión siguiente, a la cual se unió el Juez Asociado Señor Feliberti Cintrón:
Estoy conforme con la decisión del Tribunal y hago constar que el Estado habrá cambiado de parecer, pero la ley no. En vez de gastar tinta y tiempo en tratar de convencernos de que la Constitución dice lo que no dice, sería prudente y más provechoso para su nueva postura que el Estado dirigiera sus esfuerzos a enmendar la ley.
El Juez Asociado Señor Rivera García emitió un voto particular de conformidad. El Juez Asociado Señor Kolthoff Caraballo emitió un voto particular de conformidad.
La Jueza Asociada Señora Fiol Matta reconsideraría e hizo constar la expresión siguiente:
Reitero lo expuesto en mi voto disidente de 20 de febrero de 2013 en el caso de epígrafe. Por ello, considero que el Tribunal debería reconsiderar la decisión que se tomó en el caso y acogería la moción de reconsideración presentada por la peticionaria AAR. Como explica el Juez Presidente Señor Hernández *382 Denton en su voto disidente en esta ocasión, es lamentable que el Tribunal desaproveche la oportunidad de estudiar los nuevos fundamentos expuestos por la peticionaria en su Moción de Reconsideración, así como de analizar los planteamientos sobre el cambio de política pública del Estado que expone la Moción Informativa de la Oficina de la Procuradora General. Tal como indica la Juez Asociada Señora Rodríguez Rodríguez en su voto particular disidente, no se debe descartar lo manifestado por la Procuradora General en su moción informativa —que no es una moción de reconsideración y se rige por otros términos— cuando se utilizó la postura de su Oficina para justificar la Opinión del Tribunal certificada anteriormente. Tampoco debe perderse de vista que el deber de la Procuradora General es defender la Constitución de Puerto Rico por encima de cualquier ley del País que la contravenga y eso es lo que intenta esta funcionaría con su escrito ante este Tribunal. Asimismo, cabe advertir que, independientemente de las posturas de cada cual sobre una controversia, no se deben tratar de forma despectiva las ideas que presentan las partes para fundamentar sus solicitudes ni el trabajo que realizan los funcionarios públicos en cumplimiento de lo que entienden que es su deber.
El Juez Presidente Señor Hernández Denton emitió un voto particular disidente. La Jueza Asociada Señora Rodríguez Rodríguez emitió un voto particular disidente. El Juez Asociado Señor Estrella Martínez reconsideraría.
(.Fdo.) Aida Ileana Oquendo Graulau

Secretaria del Tribunal Supremo

Voto particular de conformidad emitido por el
Juez Asociado Señor Kolthoff Caraballo.
I
Existen verdades absolutas. Son verdades perennes, inmutables, algunas insondables, pero todas ineludibles. Las verdades absolutas, por definición, no están sujetas a núes *383 tra razón. Por medio de la razón las reconocemos, pero no las podemos hacer más o menos ciertas; si las reconocemos son verdad y si no las reconocemos no dejan de serlo.
El popular o populista relativismo cultural ejerce su influencia sobre toda verdad y oblitera la existencia de las verdades absolutas. Sin embargo, el Derecho, como reflejo del ser racional e instrumento de la justicia, no puede negar tales verdades. El que la tierra gira sobre su propio eje y que tal realidad marca las horas del día, son verdades absolutas y el Derecho no puede pretender obviarlas. El que la existencia del hombre es finita es otra verdad absoluta, sin la cual no tendría sentido todo el milenario derecho sucesorio. El que el ser humano nace, envejece y muere en un ciclo extraordinario de existencia, es otra verdad absoluta que exige una pena para aquel que troncha intencional y maliciosamente ese derecho natural e inalienable a la vida.
La clasificación del sexo, como condición orgánica de la raza humana, es otra verdad absoluta. El ser humano nace sexualmente varón o hembra, masculino o femenino. Podemos intentar negar tal verdad ajustando nuestra conducta y preferencias sexuales a lo que pensamos o sentimos, pero tal decisión no hace menos cierto lo que por naturaleza realmente somos. ¿Debe entonces el Derecho obviar tal axioma haciendo abstracción de lo que es el orden natural? Tal es la pregunta que con relación a este tipo de controversias debe hacerse todo pensador de la justicia como instrumento del orden social.
II
En su voto disidente, el distinguido Juez Presidente de este Tribunal, Hon. Federico Hernández Denton, inicia su ponencia señalando que “la decisión de esta Curia contraviene el mejor bienestar de una menor que ha sido amada y protegida por sus dos madres desde antes de su nacimiento”. *384 (1) Con relación a esta expresión, es menester señalar que la decisión tomada en este caso por una mayoría de esta Curia no ordena cambio alguno en lo que ha sido la relación filial que incuestionablemente existe entre la peticionaria y la menor objeto de esta controversia. Esto es, el amor y los cuidados que conforme a la prueba presentada le han sido dispensados a esta niña, así como la amalgama de disposiciones legales y recursos notariales que siempre han estado a su disposición, en nada se verán afectados por nuestra decisión.
III
Por último, la Oficina de la Procuradora General ha comparecido ante este Tribunal y mediante una moción informativa nos anuncia que el Estado apoya la adopción solicitada por las peticionarias. Si eso es así y considerando que la Rama Legislativa se encuentra en sesión, conviene entonces que en un ejercicio saludable de separación de poderes y balance democrático, sean las ramas democráticamente electas las que aprueben un proyecto de ley que resuelva de una vez la controversia. De esa manera servimos todos mucho mejor al extremadamente importante balance de poderes, que es piedra angular de nuestra democracia constitucional. Huelga decir que, si en el sano ejercicio de sus prerrogativas constitucionales las ramas electas por el Pueblo aprueban tal proyecto, este Tribunal nada tendría que decir, pues el poder no está en nosotros sino en el Pueblo. Dejemos entonces que el Pueblo actúe.
Por lo tanto, reitero mi conformidad con la Resolución de este tribunal que declara “no ha lugar” la moción de reconsideración de la parte peticionaria.
*385 Voto particular de conformidad emitido por el
Juez Asociado Señor Rivera García.
Estoy conforme con la Resolución que deniega la solicitud de reconsideración de la peticionaria AAR. Asimismo, difiero con el mayor respeto del disenso por estar convencido de que sus razonamientos se distancian de los cimientos jurídicos que enunciamos en la Opinión mayoritaria y por consiguiente, del estado de derecho. En ese contexto, nuevamente me veo precisado a emitir unas expresiones en torno a la controversia que nos ocupa. Ello, no con el interés de convencer a los que ya han asumido una postura y se niegan a observar los datos y la evidencia que ofrece la realidad y la experiencia humana sobre la filiación natural, la cual reiteramos, debe ser imitada por la filiación adoptiva. Más bien, me pronuncio por el imperativo de adherirme a los postulados que rigen mi conciencia judicial.
Partiendo de que no existe un derecho fundamental a adoptar y de que la institución de adopción consiste en dar unos padres a un hijo y no un hijo a unos padres, me pregunto desde cuándo proteger el derecho de nuestra niñez a crecer en una familia diversa, es decir, conformada por madre y padre —personas de distinto sexo— imitando la naturaleza, es un discrimen para el adulto.(1) ¿Cuándo perdimos el norte de que la institución de la adopción gira en torno al bienestar del menor y no en torno al deseo del adulto?
Es oportuno invocar que en mi Opinión de conformidad sobre el caso de autos enfaticé que en la jerarquía de reconocimiento de derechos de la persona, mi balanza se inclina hacia los niños, población que no tiene la conciencia, ni la capacidad legal ni personal de defenderse de los gra *386 ves daños que la voluntad adulta puede causarles si se materializa su pretensión de convertirlos en objeto o en el botín de sus conflagraciones personales. En consecuencia, ante el supuesto cambio de política pública que la Procuradora General enuncia en su tardía moción de reconsideración, me reafirmo en que la balanza de mi conciencia seguirá inclinada a favor de nuestra niñez.
Debo llamar la atención a que en el título de la referida moción el Estado omite la realidad de lo que peticiona, que en contenido y sustancia no es otra cosa que una reconsideración de la Opinión mayoritaria que emitió esta Curia el 20 de febrero de 2013. Además de solicitar que le permitamos expresarse nuevamente sobre la controversia, la Procuradora General ha alterado todos sus argumentos para que obren a favor de la parte peticionaria. Ese proceder denota una desviación de su deber de defender la constitucionalidad del Art. 138 del Código Civil de Puerto Rico, 31 LPRA see. 539, que expresamente prescribe la política pública actual. Por el contrario, opta por unirse a la solicitud de reconsideración de la peticionaria.
En torno a ese extremo, es prudente señalar que en nuestro ordenamiento jurídico “[l]a moción de reconsideración funge como mecanismo para que el tribunal sentenciador pueda modificar su fallo siempre y cuando tenga jurisdicción para eso”. Febles v. Romar, 159 DPR 714, 719 (2003). A su vez, los elementos de vital importancia en los que se fundamentan las normas procesales que rigen la solicitud de reconsideración son: “(1) evitar la utilización de tácticas dilatorias por parte de litigantes perdidosos y (2) ofrecer cierta estabilidad jurisdiccional en los casos, esto es, tener más seguridad de cuándo verdaderamente un término jurisdiccional, como es el de la revisión, está próximo a vencer”. Id., pág. 719.
Como es sabido, un término jurisdiccional es “fatal, improrrogable e insubsanable, rasgos que explican por qué no puede acortarse, como tampoco es susceptible de extenderse”. (Énfasis en el original). Martínez, Inc. v. Abi *387 joe Realty Corp, 151 DPR 1, 7 (2000). Precisa enfatizar que el término para presentar una moción de reconsideración es de carácter jurisdiccional y su transcurso tiene el efecto de impedir que el tribunal pueda considerarla. Insular Highway v. A.I.I.Co., 174 DPR 793 (2008); J.P. v. Frente Unido I, 165 DPR 445 (2005).
Por su parte, en relación con la moción de reconsideración, la Regla 45 del Reglamento de este Tribunal dispone, en lo pertinente, que
(b) [t]oda moción de reconsideración deberá presentarse dentro del plazo jurisdiccional de diez días laborables mencionado en el inciso (a) de esta regla y no deberá exceder de diez páginas. No se aceptará un memorando de autoridades por separado ni una petición de prórroga para fundamentar una reconsideración presentada. Las citas de autoridades deberán discutirse en el cuerpo de la moción. El Secretario o la Secretaria denegará de plano cualquier moción de prórroga para presentar una moción de reconsideración o un escrito en apoyo a ésta. Si el tribunal deniega la moción de reconsideración,, el mandato se enviará cuatro días laborables después de la fecha cuando se envió a las partes la copia de la resolución, a menos que se haya presentado una segunda moción de reconsideración conforme a lo dispuesto en el inciso (c) de esta regla. (Enfasis suplido). 4 LPRAAp. XXI-B.
Al interpretar la citada norma, es forzoso colegir que la acción de la Procuradora General está a destiempo y es equívoca en derecho. Constituye un manifiesto desacierto por parte del Estado desatender los términos jurisdiccionales para la presentación de una solicitud de reconsideración e intentar interceder en el proceso, en artificio de otros propósitos. Además, por medio del documento intitulado Moción Informativa en Respuesta a Moción de Reconsideración y Solicitud de Autorización y Término para Presentar Postura del Estado en Relación a la Moción de Reconsideración de la Parte Peticionaria, presentado el 18 de marzo de 2013, el Estado nos incita a que adoptemos por vía jurisprudencial un supuesto de política pública que aún no se ha materializado por la vía legislativa. En ese proceder, se pretende adelantar visiones contrarias a la política *388 pública vigente y en contravención a la norma que pautamos en la Opinión de este Tribunal.
Más aún, la moción de reconsideración del Estado va más allá e invita a esta Curia a asumir el rol que no le compete. Para ello, se basa en la “posibilidad” de que el Tribunal Supremo federal decida que la Defense of Marriage Act (“DOMA”), Ley Núm. 104, 110 Stat. 2419 y que la Proposition 8 del estado de California son inconstitucionales según la tesis de que ambas piezas de ley son contrarias a la igual protección de las leyes.
Ante esas circunstancias, es ineludible puntualizar que la especulación no es un criterio que debe estar presente en las determinaciones judiciales. En específico, no podemos decidir controversias que irrevocablemente afectarán la vida de todo un pueblo fundamentando nuestro proceder en la “posibilidad” de un cambio de política pública. Más que conjeturas, tenemos ante nos evidencia concreta y abundante que es persuasiva y nos lleva a concluir que el interés de la niñez se adelanta reconociéndole su derecho a tener una madre y un padre.(2) Ello a pesar de lo que pue *389 dan sostener algunos que rechazan a priori el sentido de la maternidad y la paternidad.
En ese contexto, es inaceptable seguir aludiendo o to-mar por cierto el estribillo de la discriminación e igualdad para evadir lo que revelan confiables estudios y literatura sobre que un menor necesita idóneamente ambas figuras, madre y padre, para su formación y desarrollo.(3) Cónsono con lo anterior y según analizamos en nuestra Opinión de conformidad, las distinciones son necesarias y no existe la prerrogativa de tener o poseer un niño como derecho. En vista de ello, concibo que la institución de la adopción que modelará y será decisiva para el desarrollo de los menores, no está exenta de las regulaciones y las distinciones nece *390 sarias para imitar la naturaleza de la filiación y así propender hacia el bienestar del menor.
Ahora bien, concurro con que la maternidad y la paternidad son una experiencia humana. Entonces, en la amplitud de esta experiencia, los factores biológicos necesarios para realizarla y el bienestar de la niñez a la luz de todas sus necesidades integrales: ¿por qué debemos soslayar la realidad de que un menor precisará las figuras materna y paterna en su desarrollo? ¿Qué tiene que ver el alegado discrimen por orientación sexual con que afirmemos la realidad natural y demos prioridad a la niñez sobre el deseo adulto? Nada. ¿Se le está despojando a esta pareja de la posibilidad de convivir y llevar a cabo su vida íntima? Contestamos en la negativa.
Los argumentos aducidos en la tardía solicitud de reconsideración no constituyen una razón válida que nos incline a ignorar los hechos irrevocables e innegables de la realidad reproductiva y filial adoptiva. Si ahora el Estado pretende alterar el esquema jurídico para negar esta realidad por encima del bienestar del menor y su derecho a tener madre y padre, tal decisión no le compete a esta rama constitucional. Esto, pues un cambio de esa magnitud sobre la política pública y en los estatutos que reconocen la naturaleza de la familia le corresponden a la Asamblea Legislativa. Precisamente de eso trata el principio de separación de poderes discutido a cabalidad en la Opinión de la hermana Jueza Asociada Señora Pabón Charneco.
En fin, reitero mi conformidad con la Resolución de la mayoría de esta Curia que declara “no ha lugar” a la moción de reconsideración de la peticionaria. En ese aspecto, concibo que “[n]o es que la verdad sea demasiado difícil de hallar, muchas veces está en la superficie [plasmada en la propia naturaleza humana]. Pero es más cómodo y fácil buscar [y adelantar] una idea que concuerde con nuestros deseos, [que son] sobre todo egoístas”.(4)

 Estas mociones no cumplen con la Regla 43 del Reglamento de este Tribunal, 4 LPRAAp. XXI-B.

 Voto disidente del Juez Presidente Señor Hernández Denton, pág. 391.

 X. Lacroix, La confusion des genres: réponses á certaines demandes homosamelles sur le manage et l’adoption, Paris, Ed. Bayard, 2005.

 “Children need a mother and a father
“There are significant innate differences between male and female that are mediated by genes and hormones and go well beyond basic anatomy. These biochemical differences are evident in the development of male and female brain anatomy, psyche, and even learning styles. Consequently, mothers and fathers parent differently and make unique contributions to the overall development of the child. Psychological theory of child development has always recognized the critical role that mothers play in the healthy development of children. More recent research reveals that when fathers are absent, children suffer as well. Girls without fathers perform more poorly in school, are more likely to be sexually active and become pregnant as teenagers. Boys without fathers have higher rates of delinquency, violence, and aggression.
“Gender-linked differences in child rearing styles between parents are complementary and protective for children. Erik Erikson was among the first to note that mother-love and father-love are qualitatively different. Mothers are nurturing, expressive, and more unconditional in their love for their children. Father-love, by contrast, often comes with certain expectations of achievement. Subsequent research has consistently revealed that parenting is most effective when it is both highly expressive and highly demanding. This approach to parenting ‘provides children with a kind of communion characterized by inclusiveness and connectedness, as well as the drive for independence and individuality [which is] virtually impossible for a man or woman alone to combine effectively’.
“Gender differences are also reflected in the way mothers and fathers use touch with their children. Mothers frequently soothe, calm, and comfort with touch. Fa *389 thers are more likely to use touch to stimulate or excite their children during play. Mothers tend to engage with children on their level providing opportunities for children to take charge and proceed at their own pace. As fathers engage in rough and tumble play, they take on a teaching role like that of a coach. Roughhousing between fathers and sons is associated with the development of greater self-control in adolescent boys.
“Gender-linked diversity is also observed in parental approaches to discipline. ‘The disciplinary approaches of fathers tend toward firmness, relying on rules and principles. The approach of mothers tends toward more responsiveness, involving more bargaining, more adjustment toward the child’s mood and context, and is more often based on an intuitive understanding of the child’s needs and emotions of the moment’. Consequently, being reared by a mother and a father helps sons and daughters moderate their own gender-linked inclinations. Boys generally embrace reason over emotion, rules over relationships, risk-taking over caution, and standards over compassion. Girls generally place greater emphasis on emotional ties, relationships, caution, and compassion. Over time opposite-sexed parents demonstrate to their children the value of opposing tendencies”. (Escolios omitidos). M. Cretella, MD, FCP, and D. Trumbull, MD, FCP, Homosexual Parenting: Is It Time For Change?, American College of Pediatricians, 2012. Disponible en: http://www. acpeds.org/wp-content/uploads/Homosexual_Parenting_is_it_time_for_change.pdf (última visita el 8 de abril de 2013).

 Íd. Véase A.D. Byrd, Gender Complementarity and Child-rearing: Where Tradition and Science Agree, 6 (Núm. 2) J.L. & Fam. 213 (2005), donde se hace la pertinente afirmación siguiente: “[t]here is no fact that has been established by social science literature more convincingly than the following: all variables considered, children are best served when reared in a home with a married mother and father.” Disponible en http://narth.com/docs/gendercomplementarity.html (última visita, 8 de abril de 2013). Véanse: B. Schneider, A. Atteberry y A. Owens, Family Matters: Family Structure and Child Outcomes, Birmingham, Alabama Policy Institute, 2005, págs. 1-42, disponible en: http://www.alabamapolicy.org/wp_content/uploads/API_ Research_Current_Family_ Structure.pdf (última visita, 8 de abril de 2013); L. Sax, Why Gender Matters: What Parents and Teachers Need to Know About the Emerging Science of Sex Differences, Nueva York, Doubleday, 2005; D. Blankenhorn, Fatherless America, Nueva York, Basic Books, 1995.

 A. Solzhenitsyn, Peace and Violence, New York Times, 15 de septiembre de 1973.