ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VII ESPECIAL

| | | |
|---|---|---|
| SUIZA DAIRY, CORP.<br><br>Recurrente<br><br><br>V.<br><br><br>OFICINA PARA LA REGLAMENTACIÓN DE LA INDUSTRIA LECHERA<br><br>Recurrida | KLRA202300467 | Revisión de Decisión Administrativa procedente de Suiza Dairy, Corp.<br><br>Sobre: Impugnación del Reglamento Núm. 10 enmendado, enmiendas a las Secciones 10(B) y 20(C) del Reglamento núm. 5 y órdenes administrativas de la Oficina para la Reglamentación de la Industria Lechera ("ORIL") que ponen dichas enmiendas en vigor |

Panel integrado por su presidenta, la Juez Ortiz Flores, la Juez Brignoni Mártir y el Juez Candelaria Rosa

Ortiz Flores, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de septiembre de 2023.

Comparece ante nuestra consideración Suiza Dairy Corporation (Suiza, recurrente) mediante el recurso de revisión en el que procura la nulidad del Reglamento Núm. 9485 y las Secciones 10(b) y 20(c) del Reglamento Núm. 9484 de la Oficina para la Reglamentación de la Industria Lechera (ORIL, recurrida). Además, impugna las órdenes administrativas emitidas a la luz de estos reglamentos, particularmente las órdenes número 2023-29, 2023-30, 2023-31, 2023-32. La recurrente alega que, al promulgar estas enmiendas, la agencia excedió la autoridad delegada a esta por la *Ley para Reglamentar la Industria Lechera*, Ley Núm. 34 de 11 de junio de 1957, 5 LPRA secs. 1092 *et seq.*

Por los fundamentos a continuación, desestimamos el recurso ante nuestra atención por falta de jurisdicción.

**I**

La Asamblea Legislativa, preocupada por una crisis en la industria lechera, creó la Oficina del Administrador de la Reglamentación de la Industria Lechera con el fin de reglamentar la disposición del excedente de

leche sin perjudicar los intereses de la industria. Además, le encomendó a organizar campañas para aumentar el consumo de leche fresca e instrumentar una mejor distribución de leche para abaratar costos. Exposición de Motivos, Ley Núm. 34, *supra.* Por consiguiente, facultó al Administrador para "investigar y reglamentar todas las fases de la industria lechera y los productos derivados de ésta, en el Estado Libre Asociado de Puerto Rico, incluyendo la producción, elaboración, esterilización, manufactura, almacenaje, compra y venta, transportación y distribución del producto principal y sus derivados". *Id.* sec. 1096(a). Específicamente se le autorizó a "[f]ormular los planes necesarios para disponer de la leche excedente a los fines de proteger integralmente la industria". *Id.* sec. 1096(b).

A la luz de estos poderes, la ORIL adoptó el Reglamento Núm. 10, mejor conocido como el *Reglamento 10 de la Industria Lechera para establecer fórmulas para canalizar el excedente, fijar precios de la leche en todos sus niveles y establecer las normas de expansión en la producción y derogar el reglamento 351, según enmendado sobre este mismo asunto, aprobado el 29 de enero de 1957.* Asimismo, promulgó el Reglamento Núm. 5, mejor conocido el *Reglamento Núm. 5 de la Oficina de Reglamentación de la Industria Lechera para establecer las normas que regirán la calidad de la leche en todas sus fases de producción, elaboración y venta y para derogar el reglamento número el Reglamento 351, según enmendado sobre este mismo asunto, aprobado el 20 de enero de 1957.*

Posteriormente, después de la declaración de nulidad de varias órdenes administrativas,[1] el 18 de julio de 2023, la ORIL adoptó enmiendas a estos reglamentos. En cuanto al Reglamento Núm. 5, entre otras, quedó enmendada la sección 10(b) mediante la cual se establece la fecha de expiración de la leche y productos derivados. Esta disposición establece que todo envase de leche y producto de leche debe tener impreso una

---

[1] *Suiza Dairy, Corp., v. Oficina para la Reglamentación de la Industria Lechera*, KLRA202200653 (30 de enero 2023).

fecha de expiración determinada por el Administrador mediante Orden Administrativa. La fecha de expiración será determinada por el Administrador tras la investigación mediante pruebas de durabilidad. Específicamente, la durabilidad de la leche deberá ser como mínimo diez (10) días y como máximo dieciséis (16) días. Además, quedó enmendada la sección 20 para establecer que no pueden venderse envases marcados con una fecha de expiración mayor a dieciséis (16) días desde la pasteurización de la leche.

Por otra parte, enmendaron el Reglamento Núm. 10 tras "ciertas determinaciones del Tribunal De Apelaciones de Puerto Rico que justifican que el Administrador enmiende ciertas disposiciones relacionadas al manejo del excedente de leche. La presente enmienda se realiza para adaptar y actualizar las disposiciones de este Reglamento a la situación actual de la industria lechera y dar cumplimiento a la LPAU". *Id. Art. 3 (b).* Por consiguiente, se enmendó la definición de *leche fluida*[2] y *excedente de leche*[3] con el fin alegado de conformarlo a la Ley Núm. 34. En esa misma línea se enmendó la definición para *leche retenida*.[4] También enmendaron la Sección 6 para sustituir el término *quincena* por *catorcena*, y para reglamentar el deber de los elaboradores de informar todo cierre total o parcial de sus operaciones.[5] Asimismo, quedó enmendado el inciso 1 de la Sección 7, para establecer que ninguna persona podrá ser agente para la venta y distribución de los productos del elaborador sin haber obtenido la licencia contemplada para estos.

De igual modo, respecto a la canalización del excedente de leche, el nuevo reglamento dispone que el Administrador puede asignar productores nuevos a cualquier elaborador. Para ello, "[l]os criterios para

---

[2] "Leche en su estado líquido ya sea cruda, pasteurizada y homogenizada, ultra pasteurizada y aséptica (leche 'UHT' por sus siglas en inglés) o elaborada de tal manera que su producto final mantenga el estado líquido, que se expende en distintos tipos, formulaciones o categorías para consuma directo al público". Reglamento 10, Reg. Núm. 9485, Art. 5, Sec. 4(j).

[3] "Significa leche cruda producida en exceso de las necesidades del mercado de leche fresca, que se utilice para manufacturar productos lácteos, o para enlatarla condesada, evaporada, pulverizada o en cualquier otra forma". *Id.* Sec. 4(h).

[4] "Es la leche que retienen los elaboradores para su elaboración". *Id.* Sec. 4(n).

[5] *Id.* Art. 6, Sec. 6(g)(h).

evaluar en la asignación, reasignación o redistribución de Productores serán principalmente la participación en el mercado de Leche Fresca y Leche Fluida de cada Elaborador, asegurando una distribución de Productores equidistantemente". *Id.* Art. 8. Sec. 8(b).    Además, el Administrador fue encomendado con el estudio anual de la participación en la distribución del mercado de Leche Fresca y de Leche Fluida entre los Elaboradores. Por consiguiente, "[e]l Administrador proyectará la Producción para el año aplicable y asignará a cada Elaborador el volumen de la Producción conforme a la participación porcentual del mercado de Leche Fresca y/o de Leche Fluida del año fiscal anterior con el margen de crecimiento que estime necesario para suplir la demanda de productos de Leche Fresca y/o Leche Fluida de cada Elaborador". *Id.* Sec. 8(d).

Conforme a estas enmiendas a los reglamentos, la ORIL emitió múltiples Órdenes Administrativas. Entre estas, la Orden Administrativa 2023-29 dispuso que la fecha de expiración para la leche fresca de Suiza debía ser como máximo doce (12) días desde su elaboración, mientras que la de Vaquería Tres Monjitas tendría un máximo de dieciséis (16) días. Por otro lado, mediante la Orden Administrativa 2023-30, la ORIL ordenó que "a partir del 23 de agosto de 2023, Suiza Dairy, Corp., Vaquería Tres Monjitas, Inc., e Industria Lechera de Puerto Rico, Inc. recibirán un abasto de leche cruda excedente para suplir la demanda de leche fluida y no fluida de cada una de las plantas en la proporción de su necesidad reflejada por su utilización según establecido en esta orden, y en el Anejo A". Además, por medio de la Orden Administrativa 2023-31 y la 2023-32 le asignó a Suiza y Vaquería Tres Monjitas el monto de leche cruda que debía entregarle a Indulac.

Disconforme con dichas enmiendas y las órdenes emitidas a la luz de estas, Suiza presentó el recurso de revisión ante nuestra consideración. Mediante esta petición, procura que este Tribunal decrete la nulidad del Reglamento Núm. 10, las secciones 10(b) y 20(c) del Reglamento Núm. 5

y las órdenes administrativas emitidas por la ORIL. Particularmente señaló

la comisión de los siguientes errores:

> PRIMER ERROR: Erró la ORIL al aprobar el Reglamento Núm. 10 enmendado, que contraviene tanto la finalidad estatutaria de Indulac como una planta de balance, como la definición estatutaria de excedente de leche y el orden de prioridad de repartición de rutas de leche cruda que dispone una sentencia federal.

> SEGUNDO ERROR: Erró la ORIL al aprobar una enmienda al Reglamento Núm. 5 que crea una ventaja competitiva a favor de VTM en violación de la sentencia federal y la Ley Núm. 34.

> TERCER ERROR: Erró la ORIL al aprobar enmiendas que son contrarias al principio de cosa juzgada en su modalidad de impedimento colateral por sentencia.

Por su parte, la ORIL presentó una *Moción de desestimación por falta de jurisdicción* en la cual sostuvo que Suiza impugnó las enmiendas a los reglamentos de la agencia invocando la jurisdicción del Tribunal de Apelaciones basado en la sección 2.7 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), Ley Núm. 38-2017, 3 LPRA sec. 9617. La agencia razonó que dicha disposición establece que "cualquier acción para impugnar la validez de su faz de una regla o reglamento por el incumplimiento de las disposiciones de esta Ley deberá iniciarse en el Tribunal de Apelaciones dentro de los treinta (30) días siguientes a la fecha de vigencia de dicha regla o reglamento". *Id.* Respecto al recurso ante nuestra consideración, adujo que ambos reglamentos enmendados fueron aprobados conforme a los requisitos establecidos por la LPAU. Sostiene que, puesto a que Suiza no refuta incumplimiento procesal alguno conforme a la LPAU, la Sección 2.7 de esta ley no provee jurisdicción a este Tribunal para atender el recurso presentado.

Suiza se opuso a la solicitud de desestimación, al establecer que la Sección 2.7 permite impugnar la validez de su faz de una regla legislativa por incumplimiento sustancial con las disposiciones de la LPAU, así como cuando "la regla no se ajusta a los poderes que le delegó la Legislatura a

la agencia administrativa que la promulgó".[6] Sostuvo que la revisión de legalidad de los reglamentos era incidental a la revisión de las órdenes de la agencia. Por consiguiente, solicitó la denegatoria de la moción de desestimación.

**II**

La jurisdicción es la autoridad o el poder de un Tribunal para considerar y decidir determinada controversia ante sí. *Pérez López v. CFSE*, 189 DPR 877, 882 (2013). Es norma reiterada que los tribunales debemos ser celosos guardianes de nuestra jurisdicción. *Souffront v. A.A.A.*, 164 DPR 663, 674 (2005). Por tanto, una vez cuestionada nos corresponde realizar un análisis riguroso sobre nuestra jurisdicción, pues de la misma depende nuestra autoridad para adjudicar la controversia que se nos presenta. *Id.* Los tribunales no poseemos autoridad para atribuirnos jurisdicción en los casos en los que no la tenemos, así como tampoco las partes la pueden otorgar. *Maldonado v. Junta Planificación*, 171 DPR 46, 55 (2007). La ausencia de jurisdicción es simplemente insubsanable. *Id.* Por consiguiente, cuando un tribunal determina que no tiene autoridad para atender un recurso, solo puede así declararlo y desestimar el caso. *Carattini v. Collazo Syst. Analysis, Inc.*, 158 DPR 345, 355 (2003).

Como norma general, las agencias administrativas gozan del poder para aprobar reglas y reglamentos. Sec. 1.3 de la Ley de Procedimiento Administrativo Uniforme, Ley Núm. 38-2017, 3 LPRA sec. 9603(n). Las reglas formuladas por las agencias se distinguen entre legislativas y no legislativas. *Mun. de Toa Baja v.* D.R.N.A., 185 DPR 684, 696 (2012). Las reglas legislativas, debido a que afectan derechos, imponen obligaciones y establecen patrones de conducta con fuerza de ley, su aprobación requiere el cumplimiento del procedimiento de reglamentación provisto por la LPAU. *Sierra Club v. Jta. Planificación*, 203 DPR 596, 605 (2019). A la luz de la LPAU, "para que la reglamentación sea válida deben cumplirse cuatro requisitos básicos: (1) notificar al público la reglamentación que ha de

---

[6] *Oposición a Moción de Desestimación*, a la pág. 2.

aprobarse; (2) proveer oportunidad para la participación ciudadana, incluyendo vistas públicas cuando sea necesario u obligatorio; (3) presentar la reglamentación ante el Departamento de Estado para la aprobación correspondiente, y (4) publicar la reglamentación aprobada. *Fideicomiso de Conservación de Puerto Rico y Para la Naturaleza, Inc. v. Estado Libre Asociado de Puerto Rico*, 2023 TSPR 26, a la pág. 10 (*que cita a* 3 LPRA secs. 9611-9618).

En lo pertinente al caso de autos, el Tribunal de Apelaciones tiene competencia para revisar actuaciones administrativas principalmente por las Secciones 2.7 y 4.2 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, 3 LPRA sec. 9617, 9672. La primera de estas establece lo siguiente:

> (a) Una regla o reglamento aprobado después de la fecha de efectividad de esta Ley será nulo si no cumpliera sustancialmente con las disposiciones de esta Ley.

> (b) Cualquier acción para impugnar la validez de su faz de una regla o reglamento por el incumplimiento de las disposiciones de esta Ley deberá iniciarse en el Tribunal de Apelaciones dentro de los treinta (30) días siguientes a la fecha de vigencia de dicha regla o reglamento. La competencia sobre la acción corresponderá a la región judicial donde esté ubicado el domicilio del recurrente.

> (c) La acción que se inicie para impugnar el procedimiento seguido al adoptar las reglas o reglamentos de que se trate no paralizará la vigencia de los mismos, a menos que la ley al amparo de la cual se adopta disponga expresamente lo contrario. 3 LPRA sec. 9617.

Según reconocido por el Tribunal Supremo, la intención de la Asamblea Legislativa al establecer la acción de nulidad o acción de impugnación "fue crear un procedimiento uniforme de revisión judicial de las acciones tomadas por las agencias al promulgar sus reglamentos. *Fideicomiso de Conservación de Puerto Rico y Para la Naturaleza, Inc. v. Estado Libre Asociado de Puerto Rico*, *supra,* a la pág. 11 (que cita a *Centro Unido Detallistas v. Com. Serv. Púb.*, 174 DPR 174, 183 (2008)). Esta disposición permite que cualquier persona pueda impugnar la validez de una regla o reglamento, y no tiene que demostrar que fue afectada de

manera individualizada por su aplicación. *J.P. v. Frente Unido I*, 165 DPR 445, 462-463 (2005). El Tribunal Supremo, al explicar el fin perseguido por esta disposición, razonó que pretende proteger un interés general que "se circunscribe a los casos en que se alegue el incumplimiento con las garantías procesales de la propia ley". *Fuentes Bonilla v. ELA*, 200 DPR 364, 378 (2018). Así lo explicó el Tribunal Supremo:

> De una interpretación integrada de sus tres incisos, tomada razón de que dicha sección es parte de un esquema legislativo más amplio, se deduce con meridiana claridad que el campo de operación de la acción de nulidad está limitado a situaciones en que se alegue el incumplimiento con el proceso de reglamentación de la L.P.A.U. o de alguna otra disposición de esa ley. En consecuencia, resulta forzoso concluir que la Sec. 2.7 de la L.P.A.U., *supra*, no dejó margen para la presentación de argumentos de otro tipo por parte de ciudadanos meramente interesados en solicitar la anulación de un reglamento que, en términos procesales, cumplió sustancialmente con las exigencias de la L.P.A.U. *Centro Unido Detallistas v. Com. Serv. Púb.*, supra, a las págs. 188-189.

Por otro lado, ante la ausencia de estos criterios, "una persona que alegue ser afectada personalmente por la aplicación de un reglamento puede impugnar su validez ante el Tribunal de Primera Instancia". *Sierra Club v. Junta de Planificación*, *supra*, a la pág. 607 (que cita a *Centro Unido Detallistas v. Com. Serv. Púb.*, *supra*, a las págs. 184-185).

Por tanto, la impugnación de un reglamento de su faz se limita a casos en los que se alega incumplimiento con las garantías procesales de la LPAU. La acción de nulidad de la Sec. 2.7 de LPAU no dejó espacio para levantar argumentos dirigidos a invalidar una norma que ha cumplido el proceso de reglamentación del Capítulo II de la LPAU.

**III**

Presentado el recurso de autos, la ORIL presentó una moción de desestimación en la que arguyó que este Tribunal carece de jurisdicción debido a que la recurrente no impugnó las enmiendas a los Reglamentos 5 y 10 por incumplimiento sustancial al proceso dispuesto en la LPAU. Por su parte, Suiza se opuso al argumentar que la impugnación de su faz a una regla legislativa procede también en casos en los que la regla no se ajusta

a los poderes que le delegó la Legislatura a la agencia administrativa que la promulgó.

En este caso, según surge de la sección *Jurisdicción y Competencia* del recurso de revisión, Suiza invocó la jurisdicción del Tribunal de Apelaciones exclusivamente conforme a la Sección 2.7 de la LPAU. De un examen minucioso del recurso, es forzoso concluir que Suiza **no impugna incumplimiento alguno respecto a la promulgación de los reglamentos en cuestión**. Según previamente esbozado, **la acción de nulidad se limita a cuestionamientos procesales tales como falta de notificación al público, falta de oportunidad de participación en la promulgación de los reglamentos, falta de presentación ante el Departamento de Estado y falta de publicación, entre otros**. En la medida en que los tres señalamientos de error se ciñen a la refutación sustantiva de los reglamentos enmendados, carecemos de jurisdicción para intervenir conforme a la disposición invocada.

La Sección 2.7 y su jurisprudencia interpretativa son claros al establecer que la acción para la cual este Tribunal tiene jurisdicción es aquella en la que se alega **la nulidad de un reglamento porque al promulgarse se incumplió el proceso provisto por la LPAU**. Además, la recurrente tampoco invocó la jurisdicción de este Tribunal conforme a la Sección 4.2 de la LPAU. Contrario a *Fuentes Bonilla v. ELA*, 200 DPR 364 (2018) donde el Tribunal Supremo concluyó que procedía la revisión de la legalidad de un reglamento, en el caso de autos no nos encontramos ante el escenario de una adjudicación administrativa conforme al Capítulo IV de la LPAU.

Además, la controversia aquí planteada se distingue de nuestro dictamen anterior en la medida en que la agencia había establecido normas legislativas mediante ordenes administrativas. Así, en el caso anterior Suiza cuestionó el incumplimiento con las garantías mínimas de participación y aviso público al adoptar una regla administrativa, sobre lo cual la Sección 2.7 nos otorga jurisdicción. Sin embargo, **en este caso, la**

**agencia promulgó un reglamento sobre el cual no se cuestiona incumplimiento procesal con las disposiciones de la LPAU**; sino que **los señalamientos de error se limitaron a impugnar sustantivamente los reglamentos**.

A tenor con lo anterior, procede la desestimación del recurso ante nuestra consideración debido a que el Tribunal de Apelaciones no tiene jurisdicción para atender los señalamientos de error planteados, por no tratarse de impugnaciones de su faz a los reglamentos.

**IV**

Por los fundamentos expuestos, se desestima el recurso presentado por falta de jurisdicción.

**Notifíquese inmediatamente.**

Lo acordó el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones