| | | |
|---|---|---|
| Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL II | | |
| COLEGIO DE TECNÓLOGOS MÉDICOS DE PUERTO RICO<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE SALUD DE PUERTO RICO<br><br>Recurrido | KLRA202300595 | *Revisión* procedente del Departamento de Salud de Puerto Rico<br><br>Reglamento Núm. 9508<br><br>Sobre:<br>Petición de Revisión Administrativa |
| LABORATORIO CLÍNICO TOLEDO, LLC<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE SALUD<br><br>Recurrido | KLRA202300614 | |
| LABORATORIO CLÍNICO IRIZARRY GUASCH, INC.; ASOCIACIÓN DE LABORATORIOS CLÍNICOS, INC.<br><br>Recurrentes<br><br>v.<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO; DEPARTAMENTO DE SALUD DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO, representado por su Secretario, Hon. Carlos Mellado López<br><br>Recurridos | KLRA202300619 | |
| Panel integrado por su presidente el Juez Bermúdez Torres, el Juez Adames Soto y la Juez Aldebol Mora | | |

Número Identificador

SEN2024_____

**SENTENCIA**

En San Juan, Puerto Rico, a 12 de abril de 2024.

I.

El 14 de octubre de 2022, el Departamento de Salud (DS) informó, a través de un aviso de *Vista Pública,* publicado en su página cibernética y en el periódico *El Vocero*, su intención de adoptar el *Reglamento del Secretario de Salud para el Establecimiento y Operación de los Laboratorios de Análisis Clínicos, Centros de Plasmaféresis, Laboratorios de Patología Anatómica y Bancos de Sangre en Puerto Rico*[1] (Reglamento) y derogar el Reglamento Núm. 120[2] y el Reglamento Núm. 120A[3]. Expuso que: "El reglamento propuesto persigue atemperar la regulación del Departamento de Salud a las disposiciones de la reglamentación federal sobre establecimiento y operación de los laboratorios de análisis clínico, laboratorios de patología anatómica y bancos de sangre de Puerto Rico"[4].

En el aviso el DS anunció que el borrador del Reglamento y su correspondiente análisis de flexibilidad estarían disponibles para inspección en la página electrónica de la Agencia. Además, invitó al público en general a que presentaran sus comentarios o recomendaciones durante un término de treinta (30) días a partir de la fecha de publicación del aviso, mediante correo regular al DS o por correo electrónico a las direcciones provistas. Por último, notificó que la vista pública se celebraría el 2 de noviembre de 2022 de manera virtual.

Según el *Informe Oficial*[5] rendido por la examinadora Nilda E. Ortiz Burgos, en dicha vista depusieron dieciséis (16) personas y se

---

[1] Reglamento Núm. 9508 de 3 de octubre de 2023.
[2] Reglamento Núm. 7189 del 4 de agosto de 2006.
[3] Reglamento Núm. 8785 del 9 de agosto de 2016.
[4] Íd.
[5] *Informe sobre Propuesta para Adoptar el Reglamento del Secretario de Salud para el Establecimiento y Operación de los Laboratorios de Análisis Clínicos, Centros de Plasmaféresis, Laboratorios de Patología Anatómica y Bancos de Sangre en Puerto*

recibieron por correo electrónico treinta (30) ponencias de distintas entidades y ciudadanos con comentarios sobre el Reglamento propuesto. Entre los ciudadanos y entidades que sometieron comentarios, se encontraban el Colegio de Tecnólogos Médicos de Puerto Rico (CTMPR), el Laboratorio Clínico Toledo, LLC., y Laboratorio Clínico Irizarry Guash, Inc.

Como parte de sus anejos, el aludido *Informe* incluyó una descripción con la disposición del Reglamento propuesto, los comentarios o redacción propuestos por los ciudadanos o entidad proponente, la acción tomada por la Agencia y el fundamento para no acoger la recomendación propuesta en los casos correspondientes.

También surge del *Informe,* que el 17 de mayo de 2023 se llevó a cabo una reunión virtual con el presidente de la Junta Examinadora de Tecnólogos Médicos (Junta Examinadora) para discutir las recomendaciones que habían sido presentadas por los ciudadanos. Asimismo, que la Junta Examinadora se reunió para discutir los asuntos presentados por la Secretaría Auxiliar para la Reglamentación y Acreditación de Facilidades de Salud (SARAFS) y que había remitido su recomendación los días 19 y 22 de mayo de 2023. A su vez, se indica que la Junta Examinadora de Enfermería se reunió con el equipo de trabajo de la SARAFS y el 18 de agosto de 2023 sometió por escrito sus comentarios y recomendaciones relacionados a diversas categorías del personal de laboratorio, así como los deberes y las responsabilidades de estos.

Así las cosas, el 2 de octubre de 2023, el DS aprobó el Reglamento Núm. 9508 y emitió la versión final y firmada del mismo. Este fue aprobado por el Departamento de Estado el 3 de octubre de

---

*Rico; Derogar el Reglamento Núm. 120 del Secretario de Salud, para Regular el Establecimiento y Operación de los Laboratorios de Análisis Clínico, Laboratorios de Patología Anatómica y Bancos de Sangre en Puerto Rico y el Reglamento Núm. 120 A.*

2023. Posteriormente, el 23 de octubre de 2023, el Departamento de Estado publicó un aviso en dos periódicos de circulación general para notificar a la ciudadanía sobre la adopción del Reglamento. El Reglamento entró en vigor el 2 de noviembre de 2023.

El 17 de noviembre de 2023, el CTMPR nos solicitó, mediante *Recurso de Revisión Administrativa* --KLRA202300595--, la anulación de su faz del Reglamento Núm. 9508. Plantea:

> **ERRÓ SALUD AL APROBAR UNA DISPOSICI[Ó]N REGLAMENTARIA NULA POR INCUMPLIR CON LAS DISPOSICIONES DE LPAU.**

El 30 de noviembre de 2023, el Laboratorio Clínico Toledo también presentó *Recurso de Revisión Administrativa* **--KLRA202300614--**. Planteó:

> **ERRÓ LA PARTE RECURRIDA AL APROBAR EL REGLAMENTO #9508 SIN INCLUIR EN SU TEXTO "UN RESUMEN EJECUTIVO DISPONIENDO DE FORMA CLARA Y PRECISA EL PROPÓSITO, LA JUSTIFICACIÓN Y LOS COSTOS Y BENEFICIOS DE LA REGLAMENTACIÓN PROPUESTA", COMO REQUIERE LA SEC. 2.5 de la LPAU, 3 LPRA SEC. 9615.**

> **ERRÓ LA PARTE RECURRIDA AL APROBAR EL REGLAMENTO #9508 SIN HABER INCLUIDO EN EL INFORME DE LA OFICIAL EXAMINADORA UN RESUMEN DE LOS COMENTARIOS ORALES EXPUESTOS EN LA VISTA PÚBLICA, CONFORME LO REQUIERE LA SEC. 2.3 DE LA LPAU, 3 LPRA SEC. 9613.**

> **ERRÓ LA PARTE RECURRIDA AL APROBAR EL REGLAMENTO #9508 SIN CUMPLIR CON EL REQUISITO DE PUBLICAR UN AVISO PÚBLICO QUE INCLUYERA "UN RESUMEN O EXPLICACIÓN BREVE DE LOS PROPÓSITOS DE LA PROPUESTA ACCIÓN", CONFORME REQUIERE LA SEC. 2.1 DE LA LPAU, 3 LPRA SEC. 9611.**

Posteriormente, el 4 de diciembre de 2023, el Laboratorio Clínico Irizarry Guash, Inc. y la Asociación de Laboratorios Clínicos, Inc. presentaron *Acción de Impugnación y Solicitud de Decreto de Nulidad* **-- KLRA202300619--**. Plantearon:

> **ERRÓ LA AGENCIA AL ADOPTAR UN REGLAMENTO EN CONTRAVENCIÓN A SUS PROPIAS NORMAS, EN LA MEDIDA EN QUE LA REGLA LEGISLATIVA PROMULGADA INOBSERVA FLAGRANTEMENTE EL PROPÓSITO PROFERIDO POR LA PROPIA AGENCIA**

**QUE EN PRINCIPIO, PROCURABA ATEMPERAR LA REGULACIÓN VIGENTE A LOS ESTÁNDARES EXIGIDOS POR LA REGLAMENTACIÓN FEDERAL DE 1988, INTITULADA CLINICAL LABORATORIES IMPROVEMENTS AMENDMENTS (CLIA). LA AGENCIA POR TANTO CONCULCÓ EL PRINCIPIO SEMINAL DEL DERECHO ADMINISTRATIVO A LOS EFECTOS DE QUE LAS AGENCIAS VIENEN INEXORABLEMENTE LLAMADAS A CUMPLIR SUS PROPIAS REGLAS.**

**ERRÓ LA AGENCIA AL ADOPTAR UNA REGLA LEGISLATIVA QUE NO TOMA EN CONSIDERACIÓN LOS COMENTARIOS ESCRITOS Y ORALES SOMETIDOS POR LOS CIUDADANOS Y QUE ADEMÁS, NO PROVEE UNA RESPUESTA CABAL A LAS PREOCUPACIONES EXPRESADAS EN RELACIÓN CON EL IMPACTO ADVERSO QUE DICHA REGLA TENDRÁ EN SU EJECUCIÓN EN LAS OPERACIONES DE LOS LABORATORIOS CLÍNICOS EN PUERTO RICO.**

**ERRÓ LA AGENCIA AL PROMULGAR UNA REGLA LEGISLATIVA QUE VARÍA PRINCIPIOS REGLAMENTARIOS PREVIOS, E IMPONE REQUISITOS DE CUMPLIMIENTO QUE RESULTAN EXCESIVOS QUE TENDRAN POR EFECTO LIMITAR EL ACCESO EN PUERTO RICO A SERVICIOS DE LABORATORIO CLÍNICO. LA REGLA PROMULGADA ES POR TANTO ARBITRARIA Y CAPRICHOSA.**

**ERRÓ LA AGENCIA AL ADOPTAR UN REGLAMENTO SIN QUE DERIVE DEL EXPEDIENTE ADMINISTRATIVO UN ANÁLISIS CABAL DEL IMPACTO ECONÓMICO QUE LA REGLA TENDRÁ EN SU EJECUCIÓN, NI ANÁLISIS ALGUNO EN TORNO AL COSTO—BENEFICIO DE LA REGLA PROPUESTA.**

El 11 de diciembre de 2023, el Laboratorio Clínico Toledo nos solicitó la consolidación del **KLRA202300614** con el **KLRA202300619.** El 21 de diciembre de 2023, igual solicitud nos hizo el DS, a través de la Oficina del Procurador General de Puerto Rico. Pidió que además, se consolidará el **KLRA202300595.** Fundados en que la controversia trabada era idéntica en todos los recursos, es decir, la alegada nulidad, de su faz, del Reglamento Núm. 9508, el 17 de enero de 2024, emitimos *Resolución* ordenando la consolidación de todos los recursos y concedimos plazo al Departamento de Salud para presentar su alegato en oposición.

El 12 de febrero de 2024, el DS presentó su *Alegato del Departamento de Salud.* Sostuvo que la aprobación del Reglamento

Núm. 9508, cumplió con los requisitos procesales establecidos de: (1) notificación adecuada al público sobre la reglamentación propuesta; (2) conceder oportunidad para la participación ciudadana mediante la celebración de una vista pública y el recibo de comentarios por escrito y; (3) presentar el reglamento aprobado ante el Departamento de Estado, quien notificó al público sobre su vigencia. Añadió, que el expediente administrativo disponible para inspección pública establece con claridad y certeza los propósitos de la reglamentación, así como las razones que motivaron su aprobación y todo el proceso para su promulgación. Argumentó, que la validez del Reglamento Núm. 9508 se sostenía con las normas jurisprudenciales y que no procedía acoger la súplica de los recurrentes para que se decrete su nulidad.

No obstante, reconoció haberse cometido un error administrativo al incorporarse al Reglamento Núm. 9508 determinado texto en la Sección J del Capítulo VI, que se intitula como "Tecnólogo Médico sin Reválida". Sobre este particular, indicaron que el DS había iniciado un proceso de reevaluación de dicha sección y había advertido que el nombre de la figura a la cual se le asignaron los deberes y funciones enumerados en dicha Sección obedecían a un error administrativo. Indica, que dicho error administrativo se encontraba en proceso de ser subsanado y que por esto no era necesario comenzar un nuevo proceso de reglamentación dirigido a subsanar dicha disposición. El DS señala que el remedio que procede en derecho es únicamente que se deje sin efecto la señalada Sección J del Capítulo VI y que se mantenga la validez de las demás disposiciones.

Contando con la comparecencia de las partes, el expediente, el derecho y la jurisprudencia relevante, procedemos a resolver.

II.

A.

Por estar relacionados entre sí, discutiremos de forma conjunta el **primer** y **tercer** señalamiento de error planteados por el Laboratorio Clínico Toledo en el recurso **KLRA202300614** junto al **segundo** señalamiento de error presentado por el Laboratorio Clínico Irizarry Guash, Inc. y la Asociación de Laboratorios Clínicos, Inc. en el recurso **KLRA202300619**.

En sus sustratos, estos plantean que incidió el DS al aprobar el Reglamento Núm. 9508 debido a que los comentarios escritos y orales que fueron expuestos por los ciudadanos no fueron tomados en consideración y no forman parte del Informe de la Oficial Examinadora, según establece la Sección 2.3 de la LPAU. Por su parte, en su tercer error el Laboratorio Clínico Toledo plantea que la agencia no hizo publicación de un *Aviso Público* que cumpliera con los requisitos establecidos en la LPAU. No les asiste razón. Veamos por qué.

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), Ley Núm. 38-2017, según enmendada, establece los requisitos que las agencias administrativas deben cumplir en los procedimientos de adjudicación y reglamentación[6]. El procedimiento de reglamentación es aquel proceso seguido por una agencia para la formulación, adopción, enmienda o derogación de una regla o reglamento[7]. El concepto de regla o reglamento se define como:

> [...] cualquier norma o conjunto de normas de una agencia que sea de aplicación general que ejecute o interprete la política pública o la ley, o que regule los requisitos de los procedimientos o prácticas de una agencia que tenga fuerza de ley. El término incluye la enmienda, revocación o suspensión de una regla existente. [...][8].

---

[6] 3 LPRA § 9601.
[7] 3 LPRA § 9603 (n).
[8] Íd. (m).

Como vemos, la característica básica de los procedimientos de reglamentación es su aplicación generalizada de normas que interpretan política pública o prescriben una norma legal[9]. A diferencia del procedimiento de adjudicación, en el proceso de reglamentación no se adjudican derechos u obligaciones de una o más personas específicas, sino que las agencias crean normas de aplicación general.

Los dos tipos de reglas reconocidas por la LPAU son: 1) las reglas legislativas y, 2) las reglas no legislativas. Una regla legislativa "es aquella que crea derechos, impone obligaciones y establece un patrón de conducta que tiene fuerza de ley"[10]. Este tipo de regla, "impacta directamente a los ciudadanos en general y obliga con fuerza de ley a la agencia"[11]. En consecuencia, al adoptar este tipo de reglas las agencias deben observar estrictamente los requisitos de la LPAU, los cuales incluyen: (1) notificar al público la reglamentación a aprobarse; (2) brindar la oportunidad a los ciudadanos para participar y expresar cualquier reparo hacia ellas, antes de su aprobación final; (3) presentar la reglamentación ante el Departamento de Estado para la correspondiente aprobación; y (4) publicar la reglamentación aprobada[12].

En cuanto a esto, la Sección 2.1 de la LPAU rectora de los requisitos de radicación de reglamentos nuevos, dispone:

> Siempre que la agencia pretenda adoptar, enmendar o derogar una regla o reglamento, publicará un aviso en español y en inglés en no menos de un periódico de circulación general en Puerto Rico, y en español e inglés en la red de internet. Disponiéndose, que si la adopción enmienda, o derogación de la regla o reglamento afecta, a una comunidad de residentes en específico, la agencia deberá publicar el mismo aviso en un periódico regional que circule en el área donde ubique dicha comunidad, y además deberá pautar un anuncio en una emisora de radio de difusión local de mayor audiencia o mayor

---

[9] D. Fernández Quiñonez, _Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme_, 3ra. Ed. Bogotá, Colombia. Ed. Forum, 2013, pág. 123.
[10] _Asociación de Maestro_ v. _Comisión_, 159 DPR 81 (2003); _Mun. De San Juan_ v. _J.C.A._, 152 DPR 673 (2000).
[11] _Ramírez_ v. _Jta. Planificación_, 185 DPR 748 (2012).
[12] _Sierra Club_ v. _Junta de Planificación,_ 203 DPR 596,606 (2019).

cercanía a la comunidad afectada por lo menos en dos (2) ocasiones en cualquier momento en el horario comprendido entre las 7:00 de la mañana y las 7:00 de la noche. El anuncio en la radio deberá indicar la fecha en que se publicó el aviso en el periódico. **Tanto el anuncio radial como el aviso contendrán un resumen o explicación breve de los propósitos de la propuesta acción,** una cita de la adopción legal que autoriza dicha acción y la forma, el sitio, los días y las horas en que se podrán someter comentarios por escrito o por correo electrónico o solicitar por escrito una vista oral sobre la propuesta acción con los fundamentos que a juicio del solicitante hagan necesaria la concesión de dicha vista oral e indicará el lugar físico y la dirección electrónica donde estará disponible al público, el texto completo de la reglamentación a adoptarse. Al recibir comentarios por correo electrónico, la agencia acusará recibo de los mismos por correo electrónico dentro de dos (2) días laborables de su recibo. El aviso publicado en el periódico contendrá, además, la dirección electrónica de la página donde la agencia haya elegido publicar el aviso en la Red y el texto completo de la regla o reglamento[13].

Por otro lado, la Sección 2.6 la LPAU establece que, la agencia deberá mantener disponible para la revisión pública el expediente oficial. Este expediente oficial deberá contener: (1) copia de toda publicación realizada en relación al reglamento; (2) toda petición, requerimiento o cualquier comentario escrito que haya sido radicado ante dicha agencia y cualquier material escrito que la agencia haya considerado al momento de adopción de la regla y el procedimiento posterior; (3) cualquier informe que haya sido preparado por el oficial que presidió la vista con un resumen de las presentaciones; (4) copia de cualquier análisis regulatorio que se haya preparado para la adopción del reglamento; (5) copia de la regla y una explicación de la misma y; (5) cualquier petición de excepción, enmiendas, derogación o suspensión de la regla[14].

Finalmente, una vez haya sido aprobado el reglamento por la agencia este deberá ser presentado en el Departamento de Estado y será examinado por el Secretario de Estado para determinar si cumple con las disposiciones de la LPAU. Si este lo aprueba, hará

---

[13] Sec. 2.1 de la LPAU, 3 LPRA § 9611. Énfasis nuestro.
[14] 3 LPRA § 9616.

constar dicha aprobación en cada copia del reglamento y publicará en dos (2) periódicos de circulación general una síntesis del reglamento radicado y entonces, se entenderá que el reglamento ha sido debidamente radicado según exigido por ley[15].

En cuanto al proceso de participación ciudadana, la LPAU establece que la agencia deberá proveer oportunidad para que los interesados presenten comentarios por escrito durante un término no menor de treinta (30) días, los cuales comenzaran a contarse desde la publicación del aviso[16]. Respecto al proceso de vistas públicas, la Sección 2.3 de la LPAU establece que las agencias podrán tomar discrecionalmente cita para vista pública y que el funcionario que presida dicha vista preparará un informe para ser considerado por la agencia, que contendrá un resumen de los comentarios orales que sean expuestos[17].

## B.

En el caso ante nuestra consideración, el DS cumplió en esencia con la normativa vigente. De una lectura del expediente administrativo, así como de los documentos presentados por las partes surge, primero, que, la Agencia publicó un aviso tanto en español como en ingles en un periódico de circulación general y en su portal cibernético y que dicho aviso informaba a la ciudadanía sobre el lugar, los días y la hora para someter comentarios, así como de la celebración de vista pública. En segundo lugar, luego de la celebración de la vista, la funcionaria que la presidió preparó un informe -es parte del expediente administrativo oficial del Reglamento- conteniendo los comentarios y opiniones emitidos por los participantes y, expuso el fundamento para acoger o denegar los mismos.

---

[15] 3 LPRA § 9621.
[16] 3 LPRA § 9612.
[17] 3 LPRA § 9613.

Por otro lado, al revisar el *Aviso* publicado por el DS, notamos que cumplió sustancialmente con las disposiciones mínimas contenidas en la Sección 2.1 de la LPAU. Este *Aviso* contenía una explicación breve del propósito del reglamento propuesto, se notificó que el borrador del reglamento y el análisis de flexibilidad se encontraban en la página electrónica para la revisión de la ciudadanía, se estableció la forma en la cual debían ser enviados los comentarios por escritos, así como la fecha y manera de celebrarse la vista pública.

III.

A.

Procedemos ahora a discutir, igualmente de forma conjunta, el **primer error** del recurso **KLRA202300614** y el **cuarto error** del recurso **KLRA202300619**, por estar estos relacionados entre sí. En su sustrato, el Laboratorio Clínico Toledo, sostiene que el DS incumplió con los requisitos establecidos en la Sección 2.5 de la LPAU debido a que al aprobar el Reglamento Núm. 9508 no incluyó un resumen ejecutivo que contenga los propósitos, los costos y los beneficios de la reglamentación propuesta. Por su parte, el Laboratorio Clínico Irizarry Guash, Inc. y la Asociación de Laboratorios Clínicos, Inc. sostienen que no se deriva del expediente administrativo un análisis del impacto que este tendría. Estos errores tampoco se cometieron. Elaboramos.

La Sección 2.5 de la LPAU, regula el contenido de la regla o reglamento, así como su estilo y forma. Su inciso (b) dispone que toda regla o reglamento adoptado o enmendado ha de contener **una "explicación breve y concisa** de sus propósitos o de las razones para su adopción o enmienda que incluya un resumen ejecutivo disponiendo de forma clara y precisa el propósito, la justificación y

los costos y los beneficios de la reglamentación propuesta"[18]. Nuestro Tribunal Supremo ha establecido que esta exigencia se cumple con que la agencia explique las razones que motivaron la adopción, enmienda o derogación de un reglamento[19].

En el expediente administrativo existe evidencia suficiente para concluir que el Reglamento impugnado cita las disposiciones legales que autorizan su promulgación y su propósito. Incluye, además, documentos titulados: *Análisis de Flexibilidad Inicial* y *Análisis de Flexibilidad (Final),* los cuales incluyen la justificación del reglamento. A su vez, este último expone que el promulgado Reglamento busca atemperar nuestra reglamentación con las normas federales del FDA, así como una explicación de las personas o entidades que se encontraran sujetas a esta reglamentación. Finalmente, el Análisis de Flexibilidad (Final) incluye un resumen de los costos y los beneficios que implicará atemperar el Reglamento. Nos parece que la declaración hecha por el DS en el Reglamento cumple a cabalidad con la explicación "breve y concisa" sobre los propósitos de la agencia para promulgar el reglamento, así como de los costos y beneficios de este, exigida por la LPAU.

B.

Ahora bien, en su **primer y tercer** señalamiento de error, el **Laboratorio Clínico Irizarry Guash, Inc.** y la **Asociación de Laboratorios Clínicos, Inc.** en el recurso **KLRA202300619** plantean que el Reglamento promulgado no cumple el propósito que el DS buscó adelantar. Alegan que, contrario a la reglamentación federal, el Reglamento Núm. 9508 impone criterios más estrictos, innecesarios, redundantes y costosos, causando un incremento en los costos de la operación y de las pruebas de los laboratorios. En cambio, el DS alega que este Foro intermedio carece de jurisdicción

---

[18] 3 LPRA § 9615. Énfasis nuestro.
[19] *Asociación de Farmacias* v. *Departamento De Salud,* 156 DPR 105, 127 (2002).

para atenderlos por no tratarse de planteamientos relacionados al incumplimiento con las garantías procesales de la LPAU en el proceso de aprobación del Reglamento. Coincidimos con el argumento del DS. Veamos por qué.

La LPAU establece que, si una regla o reglamento no cumple con las disposiciones dispuestas por ley, estará sujeta a que se cuestione su validez judicialmente[20]. Es tales casos, cualquier persona puede impugnar **la validez de su faz**. El Art. 2.7 (b) de la LPAU establece que:

> Cualquier acción para impugnar la validez de su faz de una regla o reglamento por el incumplimiento de las disposiciones de esta Ley deberá iniciarse en el Tribunal de Apelaciones dentro de los treinta (30) días siguientes a la fecha de vigencia de dicha regla o reglamento. [...]

Cuando se cuestiona **la validez de su faz** de una regla o reglamento cualquier persona, haya participado o no de las vistas públicas celebradas como parte del proceso para su aprobación, puede impugnarlo. No se le requiere, "ser afectado por la aplicación de dicha regla o reglamento para tener la capacidad para promover la referida impugnación [...]"[21], pues al alegar defectos procesales lo que se busca es "invalidar el reglamento en toda circunstancia en que pueda ser aplicable"[22].

Ha sido establecido que, la intención del legislador al establecer esta acción de impugnación lo fue crear un procedimiento uniforme de revisión judicial de las acciones tomadas por las agencias al momento de promulgar reglamentos[23]. La agencia administrativa no tendrá discreción para apartarse del procedimiento establecido por la LPAU, por lo que cualquier incumplimiento sustancial con dichas normas viciará de nulidad el

---

[20] 3 LPRA § 9617 (a).
[21] *J.P.* v. *Frente Unido I.,* 165 DPR 445 (2005), pág. 462-463. Énfasis nuestro.
[22] *Centro Unido Detallistas* v. *Com. Serv. Pub.* 174 DPR 171, 186 (2008). Véase también: D. Fernández Quiñonez, <u>Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme</u>, 3ra. Ed. Bogotá, Colombia. Ed. Forum, 2013, pág. 140.
[23] *Centro Unido Detallistas,* 174 DPR a la pág. 183.

reglamento aprobado[24]. Por tanto, en los procedimientos de impugnación de su faz de un reglamento, la tarea del foro judicial se concentrará en examinar si la agencia cumplió con los requisitos establecidos en la LPAU[25]. Ello así, por tratarse estos señalamientos de error sobre planteamientos dirigidos a cuestionar la validez sustantiva de las disposiciones de derecho del reglamento y no estar dirigidas a impugnar el procedimiento de aprobación y publicación, por lo que no estamos en posición de atenderlos.

IV.

Finalmente, el **CTMPR** planteó en su recurso **KLRA202300595** que, al aprobar el Reglamento Núm. 9508, el DS incumplió con la LPAU. Alega que el DS realizó reuniones privadas con posterioridad al proceso de participación pública y que, luego de estas, introdujo y aprobó enmiendas que no estaban incluidas a la versión disponible para comentarios. En específico, señaló, que en la Sección J del Artículo VI se introducía por primera vez la figura del "tecnólogo médico sin reválida", sin haber sido objeto de notificación, ni de comentarios por no haber estado disponible en el borrador que fue publicado inicialmente. Tiene razón.

Inclusive, el DS reconoce la improcedencia de las enmiendas a la Sección J del Artículo VI, aprobadas con posterioridad al proceso de participación pública. Mediante estas, se introdujo por primera vez la figura del "tecnólogo médico sin reválida", que no estaban incluidas en la versión disponible para comentarios. Señala que, dicho proceder obedeció a un error administrativo en la redacción de esa sección específica del reglamento. Sin embargo, aseguró que dicho error se encuentra en proceso de ser subsanado.

Tratándose de un error administrativo, que no puede generar un estado de derecho que obligue a una agencia, ni que impida su

---

[24] Íd., pág. 184.
[25] Íd., pág. 189.

corrección,[26] procede el remedio solicitado por el CTMPR de anular dicha Sección del Reglamento.

## V.

A modo de recapitulación, el Departamento de Salud cumplió sustancialmente con todos los requisitos establecidos por la LPAU en el proceso de reglamentación, por lo que no procede la anulación del Reglamento Núm. 9508. Se decreta, sin embargo, la nulidad de la Sección J del Artículo VI de dicho cuerpo, en cuanto incorpora la figura del "tecnólogo médico sin reválida".

## VI.

Por los fundamentos antes expuestos, se declaran No Ha Lugar los recursos de *Revisión Administrativa* aquí consolidados y, por consiguiente, se sostiene la validez del Reglamento Núm. 9508 del DS. No obstante, decretamos la nulidad de la Sección J del Artículo VI de dicho Reglamento.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[26] *Rivera Padilla* v. *OAT*, 189 DPR 315, 345 (2013).